JACOB RUSSELL, appellant, *v.* EDWARD H. HADDUCK, appellee.

## *Appeal from Cook.*

If a note or bill is taken, before it is due, absolutely in payment and satisfaction of a precedent debt, and in the usual course of business, that is a sufficient consideration to protect the holder against any equities which might exist as between any previous parties to the note or bill.

The rule undoubtedly is, that when a party is about to receive a bill or note, if there are any such suspicious circumstances attending the transaction or within the knowledge of the party as would induce a prudent man to inquire into the title of the holder, or the consideration of the paper, he shall be bound to make such inquiry; or, if he neglect to do so, he shall hold the bill or note subject to any equities which may exist between the previous parties to it.

The true principle upon which a banker's lien must be sustained, if at all, is this: There must be a credit given upon the credit of the securities, either in possession or expectancy.

ASSUMPSIT in the Cook County Court, brought by the appellee against the appellant, as acceptor of a certain bill of exchange. The case was heard at the February term of said Court, 1846, before the Hon. Hugh T. Dickey, without the intervention of a jury. It was taken under advisement, and on the 30th day of October, 1846, the Court decided in favor of the plaintiff for the amount of the bill declared on, &c. The defendant excepted to the decision, and moved for a new trial, which motion was overruled, and judgment rendered for the plaintiff.

The cause was submitted in this Court upon written arguments of counsel.

*M. Skinner,* for the appellant, cited 4 Mass. 372, and Bailey on Bills, 114, 544.

*J. Young Scammon & N. B. Judd,* for the appellee, cited *Swift* v. *Tyson,* 16 Peters, 1, and *Bank of Metropolis* v. *New England Bank,* 1 Howard's (U. S.) R. 234.

The Opinion of the Court was delivered by

CATON, J.*    One Gracie drew a bill of exchange in favor

---

* DENNING, J. did not sit in this case.

of John T. Smith & Co. of New York city, on Russell for $180·35, which was accepted by him. The bill was indorsed by Smith & Co. to Newberry & Burch, of Chicago, to whom it was sent for collection. John T. Smith & Co. were bankers and brokers in New York city, and Newberry & Burch were engaged in the same business in Chicago. These two firms were correspondents of, and depositaries for each other; and when money was collected by one for the other, it was entered in the cash account as a credit. Before the maturity of the bill, Smith & Co. failed, upon learning which, Newberry & Burch, by their successors in business, J. H. Burch & Co., sold the bill to the plaintiff below, for which he gave them in payment a check on J. H. Burch & Co. After the sale of the bill to Hadduck, and before its maturity, one Tuckerman presented an order from John T. Smith & Co. to J. H. Burch & Co., requesting them to deliver the bill to Gracie, the drawer.

Although I do not think it is proved, yet I shall assume for the present that the case shows that the bill was in fact drawn merely for the purpose of collecting the amount of Russell, and· that Smith & Co. never paid Gracie anything for it, and that Newberry & Burch gave Smith & Co. nothing for it. At the time of the failure of Smith & Co. the balance was against them and in favor of Newberry & Burch more than the amount of this bill. Before the commencement of this suit against Russell, he was notified by Gracie not to pay the bill to Hadduck. In answer to a bill of discovery, he admits that he suspected that J. H. Burch & Co. wished to get rid of the bill, but for what reason he had no idea.

The case was tried by the Court, and a judgment rendered for the plaintiff for the amount of the bill, which alone is questioned by the assignment of error.

In deciding the case it must be only necessary to determine whether Hadduck was a *bona fide* purchaser. That is, whether he gave a valuable consideration for it and received it without notice of the interest of Gracie. It is insisted on the part of Russell that it was taken by Hadduck in payment of a precedent debt due from J. H. Burch to him, which

is not a sufficient consideration to protect the indorsee. That such has been repeatedly held to be the law in New York is not denied. The case of *Coddington* v. *Bay*, 20 Johns. 637, decided in the Court of Errors in that State, is the leading case on that subject, and was generally followed there, in principle, till the decisions of the cases of *The Bank of Salina* v. *Babcock*, 21 Wend. 499, and *The Bank of Sandusky* v. *Scoville*, 24 do. 115, and in a still later case (*Stalker* v. *McDonald*, 6 Hill's (N. Y.) R. 93,) the Court of Errors of that State re-affirm the doctrine of *Coddington* v. *Bay*. This question was before the Supreme Court of the United States in the case of *Swift* v. *Tyson*, 16 Peters, 1, where all of the cases are reviewed by Mr. Justice Story, and the rule as laid down in *Coddington* v. *Bay*, held not to be the law. This decision is reviewed and the question again discussed at great length by Chancellor Walworth, in the case of *Stalker* v. *McDonald*, above referred to, where he endeavors to prove that Justice Story had entirely misunderstood all the English cases on the subject, as well as those in 21 and 24 Wend.

Admitting the authorities to be conflicting on this subject, as they most undoubtedly are, I think the most sensible and reasonable rule is, that if a note or bill is taken, before it is due, absolutely in payment and satisfaction of a precedent debt and in the usual course of business, that is a sufficient consideration to protect the holder against any equities which might exist as between any previous parties to the note or bill. In the case above referred to, reported in 6th Hill, Chancellor Walworth admits this to be the rule in Maine, Connecticut and Pennsylvania; but while admitting this, he still adheres to the former decisions in New York. In the conclusion of his opinion he says: "Nor do I think that the settled law of this State is so manifestly wrong as to authorize this Court to overturn its former decision, for the purpose of conforming it to that of any other tribunal whose decisions are not of paramount authority." Fortunately we do not find ourselves thus trammeled, and are disposed to adopt the rule, which we may infer from the above remark, the Chan-

cellor would have adopted but for the previous adjudications in that State on the subject.

But so far as the present case is concerned, it comes strictly within the rule as held in the cases of the 21st and 24th Wend. above referred to. Here J. H. Burch & Co. were Hadduck's bankers, with whom he had deposites; he purchased this bill and gave them his check on themselves for the amount. This was as much paying money for the bill, as if he had gone through with the idle ceremony of drawing the money out on his check and immediately paying it over again to them for this bill. Hadduck was not only a purchaser of this bill for a valid but for a valuable consideration.

The rule undoubtedly is, that where a party is about to receive a bill or note, if there are any such suspicious circumstances accompanying the transaction or within the knowledge of the party, as would induce a prudent man to inquire into the title of the holder or the consideration of the paper, he shall be bound to make such inquiry, or if he neglects *to do so,* he shall hold the bill or note subject to any equities which may exist between the previous parties to it. In other words, he shall act in good faith, and not wilfully remain ignorant when it was his duty to inquire into the circumstances and know the facts. But there is no proof here showing such to have been the case. The evidence relied upon by the defendant in the Court below, is contained in the answer of Hadduck to a bill of discovery. After denying, in the most unequivocal and unqualified terms, any knowledge or suspicion of a want of title in Newberry & Burch to this bill, he says: "This defendant has occasionally purchased bills of exchange or negotiable paper, and he knows of nothing in connection with this purchase to distinguish it from other purchases. This defendant admits that he suspected there was some reason why said Newberry & Burch desired to sell said bill, but what said reason was he does not know, but he is informed and believes that it was for the purpose of enabling them to assert their just and legal rights, and not for any such purpose as was alleged by said

complainant in his said bill of complaint." He admits that he suspected there was some reason why Newberry & Burch wished to sell the bill, but what it was he did not know. This is not sufficient of itself to enable us to say that he was not a *bona fide* holder of this bill. The bill was fair upon its face in every particular. This transaction took place in Chicago, and we infer from the whole record that the drawer and the drawees lived in New York, so that any inquiry of them was absolutely impracticable, and the acceptor could not be presumed to know what consideration had moved between the drawer and the drawees, nor does it appear now that he could have got any information from Russell on the subject. I think, therefore, that there can be no reasonable pretence for charging Hadduck with having been guilty of wilful negligence, in not having inquired into the consideration passing between the original parties to the bill. The presumption of law was, that Smith & Co. had paid Gracie a valuable consideration for this bill, and there was nothing in the case calculated to raise a suspicion in the mind of Hadduck that such was not the case.

It seems to me also, that this case is very analagous to, if not precisely identical with the case of *The Bank of the Metropolis* v. *The New England Bank*. 1 How. (U. S.) R. 234. There the Bank of the Metropolis had, for a long time, been in the habit of corresponding with the Commonwealth Bank. They mutually remitted for collection such notes or bills as either might have which were payable in the vicinity of the other, which, when paid, were credited to the party sending them in the account current kept by both banks, and regularly transmitted from the one to the other, and settled upon these principles. The balance was sometimes on one side and sometimes on the other. The New England Bank indorsed several notes, bills, &c. to the Commonwealth Bank, which were by that bank transmitted to the Bank of the Metropolis, in the usual way, for collection. Before this paper fell due, and while it was still in the hands of the latter bank, the Commonwealth Bank failed, being indebted at the time to the Bank of the Metropolis in

the sum of $2900, neither at the time of their transfer had the Commonwealth Bank any interest in the notes, bills, &c. but the entire interest in them belonged to the New England Bank, and they were merely sent to the Bank of the Metropolis for collection by the Commonwealth Bank, according to their usual practice. After the failure of the latter bank, the New England Bank claimed the notes, &c. and the Bank of the Metropolis asserted a lien upon them for the balance due from the Commonwealth Bank; and this claim was sustained by the Supreme Court of the United States. Ch. J. Taney, after alluding to the general principle that a banker, who has advanced money to another, has a lien on all paper securities in his hands for the amount of his general balance, remarks, that *prima facie* the paper belonged to the Commonwealth Bank, and if an advance of money had been made on this paper to that bank, the right to retain for that amount would hardly be disputed. He then says: "We do not perceive any difference in principle, between an advance of money and a balance suffered to remain upon the faith of these mutual dealings. In the one case as well as the other, credit is given upon the paper deposited or expected to be transmitted in the usual course of the transactions between the parties."

Here, then, is the true principle upon which this, as well as all other bankers' liens must be sustained, if at all. There must be a credit given upon the credit of the securities, either in possession or in expectancy.

Counsel suppose they can perceive a difference between that case and this, because Willard, a clerk of Newberry & Burch swore that they had kept funds in the hands of J. H. Smith & Co. to draw against. Whether funds were kept in their hands by remitting money directly, by accepting their drafts, or by transmitting paper for them to collect alone, does not appear. It is most probable that it was done in the two latter modes at least, as is most usual with all bankers and brokers, nor does it seem to me to make any difference in principle. If they placed funds in the hands of Smith & Co. in either of these modes, it was upon the faith of the

securities already on hand, with the expectation that they would continue to remit paper for collection as formerly, as well as upon the expectation that their draft would be honored.

There is no pretence that Newberry & Burch, or any of the other parties to the bill except the drawer and the drawee, had any knowledge whatever that the bill did not belong to Smith & Co.

I am of opinion that Newberry & Burch had such a lien upon this bill that they might have maintained a suit upon it in their own names and for their own benefit, if they had not transferred it to Hadduck.

It is clear to my mind that the evidence is entirely insufficient to prove the interest of Gracie in this bill as is alleged, but that would involve an inquiry into a question of fact which is not necessary for the decision of the case, and I shall therefore not pursue it.

The judgment of the County Court must be affirmed, with costs.

*Judgment affirmed.*