### State *v.* John Kelley.

October Term, 1900.

Present: TAFT, C. J., TYLER, MUNSON, START and STAFFORD, JJ.

Opinion filed March 8, 1902.

*Murderous assault—Sanity of accused—Preliminary trial—*
*Discretion—Instructions—Inference of intent.*

The preliminary question of a respondent's sanity at the time of trial, is, in the first instance, for the court, and proceeding with the trial after indications of his insanity appear, no request for a preliminary trial of sanity being made, is a matter of discretion.

In a prosecution for an assault with intent to kill, a charge that the jury must believe from the evidence that the respondent had such intent when he made the assault, but that direct and positive testimony thereof was not necessary and that it might be inferred from the evidence since the natural consequences of an act are presumed to be intended, is erroneous in so far as it allowed the jury to infer the intent which constituted a part of the crime.

When a respondent defends a prosecution on the ground of insanity, and the jury is instructed on the theory that one may be unable to refrain from an act though he knows it to be wrong, an instruction that he should be acquitted, if at the time of committing the act, he was unable to distinguish right from wrong, and had no understanding of the character and consequences of the act, and no power of will to abstain from it, is erroneous, since it requires the three conditions to exist, while, under the theory of the charge, the existence of any one of them would entitle the respondent to an acquittal.

INDICTMENT for assault with intent to kill and murder. Plea, not guilty. Trial by jury at the September Term, 1899, Washington County, *Watson,* J., presiding.     Verdict and judgment, guilty.     Sentence imposed and execution thereof ordered forthwith.     The respondent excepted.

*George T. Swasey, Z. S. Stanton* and *John W. Gordon* for the respondent.

The issue was squarely made early in the trial after counsel were employed, that respondent was insane at the time of trial.     The respondent offered to show that the injuries received from Corcoran at the time of the alleged assault, so aggravated his mental conditions that he was irresponsible.     It was error to reject this evidence.     *Hathaway* v. *Insurance Co.,* 48 Vt. 335; *Thornton* v. *Thornton,* 39 Vt. 122; *Mason* v. *Fuller,* 45 Vt. 29; *Fairchild* v. *Bascomb,* 35 Vt. 406.

The court's test and definition of insanity contained in the charge was erroneous.     The true test of criminal responsibility is to be found in 1 Clevenger's Med. Juris. of Insanity, Chap. 2. The so-called tests are only evidence, not rules of law. *State* v. *Pike,* 49 N. H. 399; *State* v. *Jones,* 50 N. H. 369; *Parsons* v. *State,* 81 Ala. 577; *Hopps* v. *People,* 35 Ill. 385.     These authorities show that the test of "right and wrong" is erroneous. See also *In re Segur's Will,* 71 Vt. 224.

The respondent requested the court to charge that the intent to kill or murder in the case at bar is a specific intent. The court nowhere complied with this request as should have been done.     The intent must be an intent in addition to the acts constituting the assault, and cannot be inferred from these acts alone.     *Simpson* v. *State,* 59 Ala. 1; 1 Bishop's Cr. L. sec. 735; *State* v. *Reid,* 40 Vt. 608.

The court had no right to say that a man intends the natural consequences of his act in respect to the part of the

crime consisting of the intent to kill and murder. *Lacefield v. State,* 34 Ark. 275.

In the case at bar there was no act of murder or manslaughter from which to infer or presume the intent to kill or to murder. The presumption about natural consequences of one's act can have no application to the part of the crime that constitutes the intent, except so far as the rule applies to the assault that was actually made. Rice Cr. Ev. 440; *People v. Sweeney,* 55 Mich. 580; *Krchvavy v. State,* 47 Neb. 337; *Walker v. State,* 7 Tex. App. 627; *Agitoni v. State,* 41 Tex. 501; *Simpson v. State,* 59 Ala. 1.

The court told the jury that the only bearing that the insanity of the respondent at the time of the trial would have, was to explain his present conduct, so that it should not be taken against him, and left it for them to convict him, even if he was then insane. It is insisted that a person accused of crime must be sane at the time of trial, or he cannot be convicted. 1 Bish. Cr. L. 396; *Freeman v. People,* 4 Denio 4; *State v. Patten,* 10 La. An. 299; *Rex. v. Little,* R. & R. 430.

*Richard A. Hoar,* State's Attorney, for the State.

The instruction about the natural consequences of an act was proper. Clark on Cr. Law, 46; Desty Cr. L. sec. 6; 3 Rice on Ev. 30. The law is that if a man is insane at the time of trial, the fact of his condition must be brought before the court and such an examination on hearing should be had then and there to establish that fact, and if the court finds him insane, he cannot be tried. No claim of this kind was made on the trial of the case and the question of the respondent's sanity at the time of trial was not raised below. 10 Enc. Pl. & Pr. 1218.

STAFFORD, J. The respondent was indicted and convicted for an assault with a dangerous weapon, with intent to kill and murder, made on the 6th day of February, 1898, upon Thomas

Corcoran. The State's evidence tended to show that Corcoran was driving a team with a pair of traverse-sleds, and wood-rack upon the sleds, past the house where the respondent lived, when the latter came out of the house with a revolver in his hand, got upon the back part of the sled and walked towards the front, where Corcoran was standing, threatening to shoot him; that, as respondent thus approached him, Corcoran pulled out a sled-stake, knocked the respondent down upon the rack, and, as he was trying to rise, knocked him down again, and after passing along the highway a rod or two threw him off, and left him lying beside the road unconscious. The respondent's evidence tended to show that he had no revolver and made no assault; that as he started out of the house, which is very near the road, he came immediately alongside Corcoran's sled on his way to the barn; that a young man, Whalen, who was on the sled with Corcoran, grabbed him and pulled him over onto the rack; whereupon Corcoran struck the respondent two or three times with the stake, and then, as he drove along, threw him off beside the road; that his head was badly cut and he remained unconscious or half conscious for several hours. His counsel claimed, and his evidence tended to show, that he was insane both at the time of the affray and at the time of the trial. He went to trial without any counsel and had none until the latter part of the first day, after the jury had been empanelled and several witnesses examined, the court having refused to assign counsel to defend him at the expense of the State upon finding that he had sufficient means. No trial was had or asked for upon the question of the respondent's capacity to be tried. During the trial he frequently muttered, to himself and aloud, things relevant and irrelevant; would get up and attempt to walk about the court room or to leave it, and make incoherent remarks; and was at times apparently delirious and frenzied, and had to be restrained by force. The State introduced evi-

dence in the opening, as well as in rebuttal, tending to show that he was not insane, either at the time of the assault or at the time of the trial. After counsel for respondent came into the case the court inquired, in view of one cross-examination, whether they claimed insanity as a defense; to which they replied, "We do not at this point." Later, although insanity was claimed as a defense, no claim was made that the law was such that the respondent could not then be tried or convicted because he was then insane, until exceptions were taken to the charge; neither did counsel state that they did not so claim.

The state's evidence tended to show that the respondent fled soon after the assault and was not seen about there for a year, and that when he was finally arrested he pretended to be sick, and tried to escape by leaving his bed, jumping out of the window, and running through the fields. In its charge the court told the jury that, if he was shamming sickness or insanity, that might be taken as evidence of guilt and that they should consider his condition all along, down to and at the trial, as bearing upon this question; but that, so far as the question of insanity was concerned, they should return a verdict of guilty, even though they were satisfied he was insane at the time of the trial, provided he was sane when he committed the assault. To this the respondent excepted on the ground that an insane person cannot legally be tried or convicted.

While it is true that an insane person,—that is, one incapable of making his defense by reason of insanity—cannot be put on trial, the cases seem to hold that the question of present sanity is, at least in the first instance, for the court; that, if the judge has any reasonable doubt about it, he should have it determined by a preliminary trial of some sort, either by himself, or by a jury called for that purpose, or, as a preliminary question, by the jury sworn to try the main case. Different methods are adopted in different jurisdictions, but the authorities

appear to be unanimous in holding that when the court, in the exercise of a sound discretion, entertains no doubt of the prisoner's sanity, no preliminary trial is required. In the present case no suggestion was made that such a trial was desired, no request was made that the question be submitted to the jury or determined by a preliminary verdict; and every step taken by the court itself must be regarded as an affirmance of its own undoubting belief that the respondent was capable of making his defense. We cannot say from the record before us that the court erred in its judgment, or that there was any abuse of its discretion in the premises. The authorities may be found collected and reviewed in an extensive note to *Baughan* v. *State,* 38 L. R. A. 577, 28 S. E. 68. See also 10 Enc. Pl. & Pr. 1218-1221.

In its charge the court said: "Before you can convict the respondent of an assault with intent to kill and murder, or of an assault with intent to kill, you must believe from the evidence, beyond a reasonable doubt, that the respondent had such intent when he made the assault. The natural and probable consequences of every act deliberately done by a person of sound mind are presumed to have been intended by the author of the act. Direct and positive testimony is not necessary to prove the intent. It may be inferred from the evidence, if there are any facts proved which satisfy you beyond a reasonable doubt of its existence. And on this question you should take into consideration the previous relations between these parties; also, whether it is true that the respondent made any declaration or statement, at the time or before the assault, as to what his intentions were; the fact that he had a revolver—if he did have one; his acts with the revolver, and his threats."

The respondent excepted to the charge that a man intends the natural consequences of his acts, so far as the court applied it to an intent as a part of the crime, but not so far as the court

,applied it to the simple assault. No change was made in the charge upon the taking of this exception. It seems to us to have been well taken. As contended by the respondent's counsel, there was in this case no act of killing from which to infer or presume the intent to kill. The only act proved was the assault. We think the charge should have been modified to meet the point taken by the exception, and that the omission to do so left it misleading. See *State* v. *Taylor,* 70 Vt. 1, 9, 39 Atl. 447.

We find no merit, however, in the exception to the supposed failure to charge that the intent to kill, or to kill and murder, must be proved as a specific intent, further than the exception is justified by the omission we have just referred to. The first portion of the paragraph quoted was a virtual compliance with the respondent's request in this regard.

In charging upon the subject of insanity the court said: "If, from all the evidence in the case, you believe beyond a reasonable doubt that the respondent committed the crime of which he is accused as charged in the indictment, and that at the time of the commission of such crime the respondent knew that it was wrong to commit such crime, and was mentally capable of choosing either to do or not to do the act or acts constituting the crime, and of governing his conduct in accordance with such choice, then it is your duty under the law to find him guilty, even though you should believe from the evidence that at the time of the commission of the crime he was not entirely and perfectly sane, or that he was greatly excited or enraged. But, on the other hand, if you believe from the evidence that at the time the respondent committed the crime, if you find he did commit it, he was so far affected in his mind and memory that he was not able to distinguish right from wrong, and had no knowledge and understanding of the character and consequences of his act, and power of will to abstain from it, then he

was not a legally responsible being and you should find him not guilty by reason of insanity."

Several times earlier and several times later in the charge reference was made to this instruction in language like the following: "If the respondent was able to distinguish right from wrong and to act accordingly, within the meaning of the law as explained in these instructions." Near the close of the charge, when summing up the law and explaining the form of the possible verdicts, the court said: "If you are satisfied * * * that the respondent had sufficient mind and memory to distinguish right from wrong and to act accordingly, within the meaning of the law as explained to you upon that subject, your verdict should be guilty; * * * But if you are satisfied that the respondent committed an assault in either of the ways above named, but at the time he committed the assault he was so far affected in his mind and memory that he was not able to distinguish right from wrong, and had no knowledge and understanding of the character and consequences of his act, and power of will to abstain from it, then your verdict should be —'not guilty by reason of insanity.' "

Only in these two places did the court attempt to give anything like a full statement of the rule, and in each of these instances, it will be observed, stated it in two parts; in the first, telling the jury on what conditions they might find the respondent sane; in the second, on what conditions they might acquit him as insane. The jury would naturally treat the two parts as equivalent statements of the same rule, the only difference being that one was in the positive form and the other in the negative, and if either part is unsound they may have been misled.

Then it follows that they may have understood that to constitute a defense the respondent must have been unable to distinguish right from wrong, *and* have had no knowledge and

understanding of the character and consequences of his act *and* no power of will to abstain from it; for the three clauses are stated conjunctively.

Many courts hold that one must be conclusively presumed to be able to choose and to govern his conduct in accordance with his choice, when he has capacity to understand the proposed act in all its bearings and consequences, and to see that it is wrong; and this because, as it is said, human society is built upon the assumption that the will is free; that a man can do what he knows he ought to do; and they put their decisions upon the ground that there is no other practical or safe rule, for one's very power to refrain from the wrong action may depend upon his knowledge that the law will hold him responsible. See *People* v. *Hubert,* 119 Cal. 216, 51 Pac. 329, 63 Am. St. Rep. 72 and note pp. 80-108, especially at pp. 100-104; *State* v. *Harrison,* and note, 18 L. R. A. 224, 15 S. E. 982.

Without accepting or rejecting this view, it is enough for the purposes of this case to observe that the jury here were apparently instructed upon the opposite theory. If this was to be adopted, then the respondent was entitled to be acquitted upon any one of three conditions: (1) If by reason of mental disease, he could not understand the character and consequences of his act; (2) if, although understanding the character and consequences of his act in other respects, he could not, by reason of mental disease, perceive that it was wrong; (3) if, although understanding the character and consequences of his act and perceiving it to be wrong, he could not, by reason of mental disease, refrain from doing it. But the charge, in the second half of the proposition, required the jury to find all three conditions before they could acquit.

If, in a given case, the evidence should tend to show that a mind might be so sound that it could understand a proposed act in all its bearings, and realize that it would be a wrong and

a crime to do it, and yet, at the same time, be so unsound that it could not refrain from doing the act, and if the evidence should tend to show that the respondent was in that condition when he did the act complained of, then it might become the duty of the court to charge upon that subject. We do not say what that charge should be, nor whether evidence to establish those propositions should be admitted. The question is one of the gravest, and upon it courts have differed and are differing widely. But if we leave out of view this part of the instruction, and treat it as even more favorable to the respondent than he was entitled to, we have still the difficulty that the jury were required to find, both that the respondent did not know and understand the character and consequences of his act, and that he had no moral perception in respect to it; whereas it was not necessary that he should have been thus totally ignorant of the character and consequences of his act, but it was enough, if he could not, by reason of mental disease, perceive that it was wrong.

We do not pretend to lay down a general rule of criminal responsibility, nor even the rule that should govern the case before us upon another trial, for the instructions to be given the jury must depend, in each instance, upon the state of the evidence when the case comes to be submitted, and what that will be we cannot know.

Several exceptions were taken to the exclusion and admission of testimony and some to remarks in argument to the jury, but upon examination it occurs to us that none of these questions are likely to arise upon a new trial, and as the case must be sent back for the errors already found, the remaining points will be passed over.

*Exceptions sustained; verdict, judgment and sentence set aside, and new trial granted.*