JOHN C. CLARK AND VINCENT CLARK v. EDWARD M. GALLAGHER.

January Term, 1902.

Present: ROWELL, MUNSON, START, WATSON and STAFFORD, JJ.

Opinion filed June 3, 1902.

*Division line—Evidence—Cross-examination—Rebuttal— New trial—Newly discovered evidence—Cumulative evidence. —Due diligence.*

In a trial involving the location of the west line of a certan lot, a certified copy of a quit claim deed from a lineal grantor of the present owner, purporting to convey a specified quantity of land out of the northwest corner thereof, without locating the line or corner of the lot, offered in connection with evidence of the location of the northeast boundary of the piece thus conveyed as marked at the time of the conveyance, is not admissible in the absence of evidence that a person so marking the boundary then knew the location of the west line of the lot.

A witness having testified as to the location of the disputed line as pointed out to him during his former residence in the vicinity, it is proper cross-examination to show by him that a former owner of another lot which the same line bounded, occupied to a different line.

When a surveyor has testified to certain surveys and measurements made for the purpose of locating a disputed line, it is proper cross-examination to show by him other surveys and measurements which he made at the same time, though not alluded to in his direct testimony.

When a surveyor has testified to the course of a disputed line indicated by marked trees, as run by him, it is proper to show in rebuttal that another surveyor running the same line made the course of the marked trees different.

When, in a controversy over a division line, the accuracy of the line established by the verdict depends upon three cardinal points, newly discovered evidence that one of those points relied upon as a lot corner, is not in fact a lot corner but the corner of a parcel sold out of the lot, and that the true lot corner is several rods away

and marked in a particular way, is sufficient to warrant the granting of a new trial.

Newly discovered evidence of facts concerning which no proof was offered on the former trial, is not cumulative, merely.

On the trial of the case, the plaintiffs used the deposition of a very old man who did not testify in court, wherein he deposed that he formerly owned parts of certain lots between which the disputed line ran, and knew where the lot corner was.    Other witnesses for the plaintiffs testified that the deponent pointed out the lot corner to them.    After the trial, the defendant discovered from the deponent that the corner pointed out by him to plaintiffs' witnesses was not the lot corner, but that the lot corner was several rods distant.   *Held*, that the defendant was not guilty of laches in not discovering this evidence.

TRESPASS *quare clausum,* with a count in trespass *de bonis.*   Plea, the general issue.   Trial by jury at the March Term, 1901, Orleans County, *Tyler,* J., presiding.    Verdict and judgment thereon for the plaintiffs.   The defendant excepted.

The defendant brought a petition for a new trial to the October Term, 1901, of this court, which was heard with the exceptions herein.

*Horace F. Graham* and *J. W. Redmond* for the defendant and petitioner.

The copy of the quit-claim deed should have been admitted; it purported to convey ten acres out of the northwest corner of No. 65; the east boundary of the part conveyed was then marked.   It appeared that, if the west line of this lot was where the defendant claimed it to be, this deed would cover ten acres; but if the line was where the plaintiff claimed, the deed would not convey nearly so much land.   The line in dispute was an ancient boundary.   Traditionary evidence is admissible.   Greenl. on Ev. s. 139; *Woods* v. *Willard,* 37 Vt. 385.   The deed offered was over fifty years old.   A deed thirty years old is an ancient deed.   Greenl. on Ev. s. 144; 2

Am. & Eng. Enc. Law 322. The offer was to show how a former owner, now dead, understood the lot was bounded on the west more than forty years ago. *Randall* v. *Chase,* 133 Mass. 210; *Morrin* v. *Callman,* 105 Mass. 129; *Drury* v. *Midland,* 127 Mass. 571; *Bell* v. *Barron,* 14 Vt. 307.

The cross-examination of Norcross was improper. The matters covered by it had not been referred to in his direct testimony. 1 Greenl. on Ev. s. 445; *Carey* v. *Hart,* 63 Vt. 426; *Huges* v. *Coal Co.,* 104 Penn. St. 213; *Railroad Co.* v. *Stimpson,* 4 Pet. 461; *State* v. *Fournier,* 68 Vt. 270; *State* v. *Slack,* 69 Vt. 493.

The same reasoning applies to the cross-examination of Taylor. Besides, it was not claimed that the surveys covered by this cross-examination were of lot lines or corners.

The testimony of Williams was not proper rebuttal. It threw no light on the accuracy of Taylor's survey. In order to test the accuracy of this survey, Williams should have run on the line which Taylor ran. But the exceptions say "Mr. Williams set his compass at a point *entirely outside* of the line claimed by either the plaintiff or defendant * * * which Mr. Miles, as the record shows, in reply to a question from the court, *admitted to be outside the line run by Mr. Taylor.*" Williams did not begin at the spruce stump; he began, as shown by the exceptions, "at a small spruce which had five marks upon it," and run to a stake and certain marked trees. described, *but not* the marked trees in the Taylor survey.

A new trial should be granted. It turns out that Dewing's line depends upon a calculation. It should run to the Chamberlin corner, but it appears from the deposition of Charles Rogers that it runs thirteen rods west of it. It should be in line with the corner on Irasburgh town line, but if extended north to Irasburgh, it would run thirty rods west of that corner. Moreover, Dewing's calculation supposed the

"Root Corner" was the southwest corner of lot No. 8. The deposition of Moses Root, attached to the petition, shows that the "Root Corner" was nothing but the southeast corner of the piece deeded to Gardner Stewart. Root says that this is the only corner he ever pointed out to the plaintiffs. He says that the lot corner is further west and up the hill. Rogers and Taylor found it, as their depositions show. So Dewing's calculation was based upon a false assumption.

It cannot be said that the defendant was guilty of laches in not discovering these facts. Root was not in court. He was their witness. The ground was covered with snow when Taylor surveyed in that locality so the stake and stones at the lot corner "up the hill" could not be found.

*W. W. Miles* for the plaintiffs and petitionees.

The quit-claim deed was, at most, only a declaration in favor of the grantor therein, and therefore inadmissible. *Everts* v. *Young,* 52 Vt. 329; *Wood* v. *Willard,* 36 Vt. 82; *Kimball* v. *Ladd,* 42 Vt. 47; I Greenl. on Ev. s. 147, *et seq.*

It was not admissible as evidence of the location of the line by reputation. *Hadley* v. *Howe,* 46 Vt. 142; cases *supra.*

The cross-examination of Norcross was proper. It affected the weight to be given his testimony. The plaintiff had a right to cross-examine him "in respect to his examination in chief in all its bearings, and as to whatever goes to explain or modify what he has therein stated." Thomp. on Trials, s. 406; *Stiles* v. *Estabrook,* 66 Vt. 535. This testimony also tended to impeach Merrill, who testified for defendant that he owned No. 41 and occupied to the "Lost Nation Road." *Carpenter* v. *Willey,* 65 Vt. 168; *Carey* v. *Hart,* 63 Vt. 424; I Greenl. on Ev. s. 445. The same authorities sustain the cross-examination of Taylor.

The testimony of Williams was properly admitted. It appeared that Dewing had run a line between these lots for the

defendant in 1899. The defendant then claimed that it was the true line. The defendant now claims the Taylor line. As tending to show that the line claimed to Dewing by the defendant was not the line Taylor surveyed, which the defendant now claims to be the true line, the evidence of Williams was offered and received.

To warrant the court in granting a new trial for newly discovered evidence, such evidence must be so conclusive as to raise a strong probability of a different result in another trial. *Briggs* v. *Gleason,* 27 Vt. 114; *Beckwith* v. *Middlesex,* 20 Vt. 593; *Thayer* v. *Railroad Co.,* 60 Vt. 214.

The evidence of Charles Rogers, shown by his affidavit, tends to show that the "Chamberlin corner" is not where the plaintiffs claim it to be. This does not entitle the petitioner to a new trial, because he preferred his motion for a new trial to the county court at the term when the same was tried, based upon the ground of newly discovered evidence tending to show that the "Chamberlin corner" was not where the plaintiffs claim it to be, which motion was overruled. *Stilphen* v. *Read,* 64 Vt. 214.

Mr. Rogers' testimony is contradicted by that of Dewing and Williams and overbalanced by it. Mr. Rogers' survey is in conflict with that of Mr. Taylor in that Rogers came out 13 rods west of the "Chamberlin corner" when, if he had run on the same point of compass as Taylor ran, he ought to have come out only 14 links west of it.

The substance of Root's affidavit is that the corner which he pointed out to several persons as the original corner between lot 7 and 8 is not the original corner between those lots, and that he does not know where the original corner is.

No sufficient reason is assigned for not having this newly discovered evidence at the former trial. *Jones* v. *Sennott,* 57 Vt. 355; *Quinn* v. *Halbert,* 52 Vt. 353; *Earl* v. *Griffeth,*

52 Vt. 415; *Lindsay* v. *Danville,* 45 Vt. 72; *Knapp* v. *Fisher,* 49 Vt. 94; *Morgan* v. *Houston,* 25 Vt. 570; *Stearns* v. *Allen,* 18 Vt. 119; *Williams* v. *Baldwin,* 18 Johns. 489; *Palmer* v. *Mulligan,* 3 Caines 30; *People* v. *Superior Ct. etc.,* 5 Wend. 114.

The evidence claimed to be newly discovered is only cumulative. *Bullard* v. *Beach,* 3 Vt. 73; *Dodge* v. *Kendall,* 4 Vt. 31; *People* v. *Superior Ct. etc.,. supra.*

WATSON, J.   The plaintiffs are the owners of lot No. 66, and the defendant of the lot immediately east of it, No. 65, in the town of Albany.   The issue, as to the plaintiffs' right of recovery, was the location of the original lot line between these two lots, as the lots in the town were originally laid out. There was no question of adverse possession in the case.   The lots in the town were all surveyed and laid out as early as 1788.   In going from north to south, now as then, one passes eighteen tiers of lots which run east and west, each tier containing twelve lots.

The defendant claimed and his evidence tended to show that the original northwest corner of lot 65 is marked by a "Spruce Stump," and that from this stump south the whole original line of the lot is indicated by a line of marked trees; while the plaintiffs claimed, and their evidence tended to show, that the original west line was practically parallel with said line of marked trees, but twenty-seven rods east of it.

As tending to show that said line of marked trees was the original line between the two lots, the defendant offered in evidence a certified copy of a quit-claim deed dated August, 1860, and recorded January 12, 1861, purporting to convey ten acres out of the northwest corner of lot 65, and in connection therewith offered to show that the northeast boundary of the piece thus conveyed was marked at the time of the conveyance, which marks continued to exist at the time of the trial; that

with the line of marked trees as the west line of lot 65, this deed would do what it purports to do, namely, grant ten acres of lot 65; but with the line as claimed by the plaintiffs, the deed would convey little more than one-half of that amount. The grantor named in the deed was one of defendant's lineal grantors, and is dead. In excluding the evidence offered, it is urged that there was error. Such a deed was held in *Baker* v. *Sherman,* 73 Vt. 26, to imply no title nor claim of title in the grantor.

The description in the deed does not locate any line or corner of lot 65, nor of the land attempted to be conveyed. The offer does not state who marked the northeast boundary of the latter. It may have been done by some one who had knowledge or evidentiary information regarding the location of the west line of the lot, or it may not. Without expressing any opinion whether the evidence would have been admissible had it been included in the offer that the marks were made by a person having such knowledge or information, clearly as the offer was made, it was properly excluded.

Albert Norcross, a witness called by defendant, testified in chief that he lived a short time on lot 65 and many years on lot 64; that sometime during his residence on the latter lot the corners of 65 were pointed out to him, and that the "Spruce Stump" marked its northwest corner; that the line of marked trees indicated the west line of the lot, and that he helped Mr. Taylor, the defendant's surveyor, make certain surveys extending southerly on the line of marked trees, between lots 65 and 66, and 55 and 56 to the "Lost Nation Road" and thence on this road southerly between lots 41 and 42. Subject to exception, the plaintiffs were allowed in cross-examination and as such, to show by the witness that one Smalley lived on lot 42 and that his land which he bought of one Babcock's estate

included easterly a part of what defendant claims is lot 41; and that Babcock owned, occupied, and cleared the same strip of land east of the "Lost Nation Road," as long ago as the witness could remember.

The direct testimony of the witness tended to show that his knowledge of the marked trees as indicating the west line had extended over many years. If believed by the jury, he was a very important witness for the defendant, in support of his contention. It was proper to cross-examine him fully regarding the subject matter of his examination in chief, and in the light of all its bearings. *Stiles* v. *Estabrook,* 66 Vt. 535. If within the knowledge of the witness, the owner of lot 42 had for many years occupied as such owner and cleared a strip of land as far east of the marked tree line and of the "Lost Nation Road" as the line claimed by the plaintiffs, it was within the scope of proper cross-examination to show it. It had a bearing upon the basis of his knowledge that the marked trees and the "Lost Nation Road" indicated the true line.

W. H. Taylor, an expert witness on surveying, was called by the defendant. In direct examination he testified that he had done surveying for the defendant on two occasions, several weeks apart, for the purpose of locating the west line of lot 65. He then testified to some of the different surveys and measurements made by him on those occasions, but not to all of them. Subject to exception, the plaintiffs were permitted to show by the witness in cross-examination that he at the same time made certain other surveys and measurements to which no allusion was made in his direct examination. To find out all the surveys and measurements that the witness made when trying to locate this west line on those two occasions was legitimate cross-examination. He being employed as a surveyor to locate that line, it might be fairly inferred

that he made only such surveys and measurements as in his judgment would throw some light thereon, and if he gave only a part of them in his direct examination it cannot be said that the other side had not the right to cross-examine regarding the rest, to get at the method of investigation pursued by him. Thomp. on Trials, s. 630.

As bearing upon the accuracy of the survey made by Taylor from the "Spruce Stump," on the line of the marked trees south to Craftsbury line, and also as bearing upon the question of how much attention he gave to the marked trees, the plaintiffs called F. C. Williams, a surveyor, in rebuttal, who testified to a survey made by him on the Friday before he testified: that Dewing, another witness for plaintiffs, took him to the northwest corner of lot 65, as claimed by the defendant, and assisted in making the survey; that he set his compass outside of the line claimed by either plaintiffs or defendant, and at a point which was pointed out to him by Dewing,—a point which the plaintiffs' attorney in reply to a question from the court, admitted to be outside of the line run by Taylor. Dewing's testimony, which was admitted without objection so far as appears by the record, is attached to and made a part of the exceptions. He testified to having surveyed the line, or in the vicinity of the dividing line, between lots 65 and 66 four times, the last of which was for the defendant in the fall of 1899; that the line he traced on that occasion was the one claimed by defendant on the trial of this case; that on the Friday before he testified in this case he went to this line with Williams, and that Williams set his compass on that line at the northwest corner of the lot to take his survey. Williams testified to surveying southerly from where he set his compass, on the line of various marked trees, describing them; that in thus running the line, the first course was 45 degrees west, the second 43½ degrees west, and the third

the same. Taylor's testimony had been that, in running the line southerly from the "Spruce Stump," he ran 41 3-16 degrees west. The evidence tended to show that Taylor and Williams commenced to survey at the same place, the northwest corner of lot 65, as the defendant claimed it, and ran southerly on the line of the marked trees, varying in their courses as they ran, from 2 5-16 to 3 13-16 degrees. Williams' testimony had a bearing on the accuracy of Taylor's survey and it was properly received.

No error appearing from the exceptions, the question of a new trial is to be considered on the ground of newly discovered evidence.

The statement of the case in the petition shows that the line run and marked by stakes by Dewing, a surveyor and witness for the plaintiffs, was the line claimed by the plaintiffs, and the one that the jury must have found to be the true line between the lots in question; that Dewing ran this line by making calculations and varying his course from forty-one and one-half degrees north and the corresponding degree south, to run a line which included the northwest corner of lot 209 at the town line of Irasburg, the so-called "Chamberlin Corner" at lot 127, and the "Root Corner" at the town line of Craftsbury. The three corners named were the cardinal points upon which the accuracy of the line as claimed by the plaintiffs, and as found by the jury, depended. The newly discovered evidence is very strong showing that the "Root Corner," instead of being a lot corner, was made for and is only the corner of land sold by Root to one Stewart, and that the true corner between lots 7 and 8 is fifteen rods further west where the surveyors of both parties found four stones circled round a hole in the ground with the end of a stake in it. Nor is the force of the newly discovered evidence in this regard materially weakened by the evidence of the petitionees. If the plaintiffs were de-

prived of the "Root Corner" as a cardinal point in the line as they claim it, their case would be very much weakened, and the defendant's case would be greatly strengthened by the evidence showing the location of the four stones and stake. From a consideration of the case before us on the petition, an injustice seems to have been done by the verdict, and the newly discovered evidence is sufficient to raise a strong probability that a new trial would result in a verdict for the defendant.

It is said that the newly discovered evidence is only cumulative, and we are referred to *Bullard* v. *Beach,* 3 Vt. 73, and *Dodge* v. *Kendall,* 4 Vt. 31, as authorities that a new trial will not be granted in such circumstances. But we do not think the evidence is simply cumulative. The record does not show that on the trial there was any evidence introduced relative to the sale of the land by Root to Stewart, the surveying of the same by Hovey and the finding of the true corner between lots 7 and 8 by him, the deeding of the land thus sold and describing it according to Hovey's survey, nor the finding of the four stones in a circle with end of stake in the ground fifteen rods west of the "Root Corner" and practically where the surveyors came out in running the line in dispute between lots 65 and 66, as defendant claims it, south to the town line. These are the material facts brought out by the newly discovered evidence. No attempt was made to prove them at the trial. They are not additional evidence of the same kind to the same point. *Bradish* v. *State,* 35 Vt. 452.

The petitionees further contend that the petitioner is guilty of laches in not discovering this evidence before the trial.

Moses Root's deposition was used by the plaintiffs in the trial. He is a very old man, did not testify in court, and the presumption is that he was not there. The petition states

that he testified in the deposition that many years ago he owned the east part of lot 7 and the west part of lot 8, and knew where the southeast corner of the former, or the southwest corner of the latter, was. It does not appear that he testified to anything more. It does appear, however, that the plaintiffs introduced several witnesses who testified that Root pointed out to them where the corner was. The statement further says that said corner was called in the trial the "Root Corner." In his affidavit attached to the petition, Root says the only corner he ever pointed out or indicated the location of to the plaintiffs, was the point known as the "Root Corner."

The record does not show that in taking the deposition used in the trial, or otherwise, the plaintiffs ascertained the facts shown by Root's testimony in support of the petition, before the trial was ended. It can hardly be said that the other side, which did not use him as a witness, ought to have known them.

The newly discovered evidence relative to the "Root Corner" is of such importance in the case, that it is unnecessary to consider whether the defendant was derelict in not getting his surveying done before the ground was covered with snow drifts at the place where the circle of stones and end of stake were subsequently found.

We do not think the case shows such lack of diligence on the part of the defendant as should deprive him of the benefit of the newly discovered evidence.

*Verdict set aside, new trial granted, and cause remanded.*