BRISTOL MANUFACTURING COMPANY *v.* E. B. PALMER.

May Term, 1909.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed October 9, 1909.

*Disputed Boundaries—Evidence—Presumptions on Review—*
*New Trial—Newly Discovered Evidence—Sufficiency.*

In a suit involving the location of the line dividing two lots, where it appeared that the eastern end of the disputed line was controlled by the location of the south line of plaintiff's lot, which was coincident with the boundary line of adjacent lots, and by the location of the east line of defendant's lot, which was coincident with, and continuation of, the boundary of other lots, the establishment of any of those lines was relevant.

The description in a deed of land is not technically a "recital," for, instead of being either a narrative of facts on which the instrument is based, or an explanation of the motive for the operative part thereof, it is the very thing which, by setting a limit to the grant, creates the boundary.

Since this Court will make all reasonable presumptions in favor of a ruling of the trial court, where the record is silent as to establishment of preliminary facts necessary to make a certain deed admissible that was introduced in evidence, this Court must assume that such preliminary facts were established. *Clark* v. *Gallagher*, 74 Vt. 331, distinguished.

The showing on a petition for a new trial, on the ground of newly discovered evidence, in a suit involving the location of a disputed boundary *held* to show a reasonable probability that a retrial would produce a different result, requiring a new trial.

TRESPASS QUARE CLAUSUM. Plea, the general issue. Trial by court at the June Term, 1907, Addison County, *Taylor*, J., presiding. Judgment for the plaintiff. The defendant excepted. The defendant also brought a petition for a new trial, on the ground of newly discovered evidence, to the Supreme Court of Addison County at its February Term, 1909, which petition was heard with the exceptions. The opinion states the case.

*Frank L. Fish* for the defendant.

The deeds in question not being in the chain of title of either party their admission was error. *Capen's Admr.* v. *Sheldon,* 78 Vt. 39; *Davis* v. *Moyles,* 76 Vt. 25.

When the point was left doubtful by the testimony of the former trial, and the newly discovered testimony will remove all doubt, or it is apparent that injustice has been done, it is certainly reasonable, and violates no rule, to grant a new trial. *Hurd* v. *Barber,* Brayt. 170; *Barker* v *French,* 18 Vt. 460; *Burr* v. *Palmer,* 23 Vt. 244; *Gilman* v. *Nicholas,* 42 Vt. 313; *Thayer* v. *Central Vermont Ry. Co.,* 60 Vt. 214; *Foss* v. *Smith,* 79 Vt. 434; 29 Cyc. 916, 917.

The new evidence is so conclusive and decisive in its character as to raise a strong probability of a different result on another trial. This is all the law requires. *Reynolds* v. *Hassam,* 56 Vt. 449; *Clark & Clark* v. *Gallagher,* 74 Vt. 331.

On a petition for a new trial the apparent injustice of the verdict is to be considered and the question as to whether justice would be served by another trial. *Bullock* v. *Beach,* 3 Vt. 73; *Dodge* v. *Kendall,* 4 Vt. 31; *Middletown* v. *Adams,* 13 Vt. 286; *Beckwith* v. *Middlesex,* 20 Vt. 593; *State* v. *Camp,* 23 Vt. 551; *Briggs* v. *Gleason,* 27 Vt. 116; *Noyes* v. *Spaulding,* 27 Vt. 420; *Gilman* v. *Nichols,* 42 Vt. 313.

*Charles I. Button* and *William H. Bliss* for the plaintiff.

The admission of the certified copy of the Vittum deed was proper, for although it was not in the chain of title of either party, the rule is that any deed or grant having a tendency to identify and fix the disputed boundary is admissible in evidence, and especially is this true when the deed in question contains a call for a corner or boundary line common to the two tracts. *Smith* v. *Prewitt,* 9 Ky. 155; *Smith* v. *Nowells,* 12 Ky. 159; *Andrews* v. *Todd,* 50 N. H. 565; 5 Cyc. 958-959; *Hathaway* v. *Evans,* 113 Mass. 264. And a deed fifty years old, of land adjoining that in controversy, is admissible on the question of the boundary of the latter tract. *Townsend* v. *Johnson,* 3 N. J. L. 279; *Donahue* v. *Whitney,* 61 Hun. 620; *Hathaway* v. *Spooner,* 26 Mass. 23; *Sparhawk* v. *Bullard,* 42 Mass. 95; *Hobbs* v. *Hobbs et al.,* 72 Atl. 290.

POWERS, J. This is a controversy over the true location of the dividing line between Lot 51, in the Third Division, and Lots 47, in the Third Division, and 47, and in the Fifth Division, in the town of Bristol. All these lots are irregular in shape. The north and south lines of 47, Third, are parallel, and the west line is perpendicular to them; but the south line is much longer than the north line, so the east line cuts the two at an angle approximating 45 degrees. Number 47, Fifth, lies directly north of 47, Third—its east line being a continuation of the east line of the latter. Number 51, Third, lies east of these two lots, its east line forming a right angle with the south line of 47, Third. Number 38, Third, lies south of the eastern part of 47, Third. Next west of 38 and south of the western part 'of 47, Third, lies the "Wright Lot," so-called, which was covered by the Vittum deed as hereinafter stated. Number 65, Second, lies next east of 51, its south line being a continuation of the south line of 47, Third, and Number 66, Second, lies next south of 65 and east of 38. Numbers 65, 66, 38 and the Wright Lot are all rectangular in form. The south-east corner of 51, the southeast corner of 47, Third, the south-west corner of 65, the northeast corner of 38, and the north-west corner of 66 are the same point—which is one end of the disputed line, and was originally marked by a spruce tree, not now to be found. The plaintiff owns 47, Third, and 47, Fifth, and the defendant owns the southern part of 51 extending down to the corner just mentioned.

From the relative locations of these lots, it is apparent that the eastern end of the disputed line is controlled by (1) the location of the south line of 47, Third, and (2) by the location of the east line of 51. And since the former is coincident with the north line of 38 and the north line of the Wright Lot, and is a continuation of the south line of 65 and the north line of 66, and the latter is coincident with the west line of 65 and a continuation of the east line of 38 and the west line of 66, it follows that the establishment of any of the lines named would be relevant to the question directly in issue. We are now speaking of these several boundaries as though they involved several different lines merely to make the argument clear; in fact, of course, only two lines are involved, one running north and south, and the other east and west, the point of intersection being one end of the disputed line.

Subject to the defendant's exception, the court admitted in evidence a certified copy of a deed of the Wright Lot, called the Vittum deed, which was not in the chain of title of either party. The description of the land granted by this deed is as follows: "Bounded north by Lot No. 47, in the 3rd Division, east by Lot No. 38, 3rd Division, south by Lot No. 34, 3rd Division, and west by Lot No. 46 in the 3rd Division." This is all there is in this deed which could be of any assistance in the determination of the issues here involved. It simply shows that the north line of the granted premises is the south line of 47, Third. It throws no light on the location of the line on the ground, and as the record stands we could safely say that its admission, if error, was harmless. We must assume, however, that it was accompanied with other evidence which made it of some practical use and importance in the trial. That it was *inter alios* is not determinative of its admissibility. The defendant evidently so understood it at the trial, for the exceptions state that both parties sought to establish their claim by reference to the boundaries of adjoining lots. That the north line of the premises covered by the deed was the same as the south line of 47, Third—which, as we have seen was relevant and important—was material as a fact preliminary to proof of the true location of such north line. That this fact could be proved by the deed cannot admit of doubt. The limits of a grant must be sought for in the deed of the premises. The description there to be found is the very thing which gives limit to the grant. Such description is not technically a "recital," for instead of being either a narrative of the facts on which the instrument is based, or an explanation of the motive for the operative part thereof—Rap. & Lawr. Law Dic. 1072—it is the very thing which by setting a limit on the grant creates the boundary. And to this extent the deed is effective against privies and strangers alike.

The Macumber-Chase deed was not in the chain of title of either party, but stands somewhat differently. It purports to convey twenty-five acres out of the south end of 65. The description is as follows: "Twenty-five acres being a part of Lot No. 65, in the 2nd Division, to the right of John Franklin, and off the south end of said Lot running the whole width of said Lot." A certified copy of this deed was admitted subject to exception. If it had been admitted simply to show that the

south line of the 25 acres was the south line of the Lot, it would have stood just like the other deed. But its use was not limited to that one point. Prof. Bryant, the surveyor, testified that taking a certain stone wall, which the evidence tended to show marked the north line of the 25 acre piece, as the true north line of the same, the south line of the 25 acre piece would fall where the plaintiff claimed the south line of 65 was located— which in turn would fix the location of the south line of 47, Third, where the plaintiff claimed it to be. The reliability of this method of proof would obviously depend upon whether the stone wall was located by one who knew the location of the south line of the lot, and if so whether the survey by which it was located was accurate. At first glance, it looks quite like the deed which was rejected in *Clark* v. *Gallagher,* 74 Vt. 331, 52 Atl. 539. There, as here, the deed did not locate any line or corner of the lot or the land conveyed. It did not appear in that case who marked the north-east corner of the piece conveyed or whether he knew or had evidentiary information regarding the location of the west line of the lot. In this case it does not appear who marked the north line of the 25 acres, or whether he knew or had evidentiary information of the location of the south line of the lot. But in that case, the evidence was excluded, and this Court held that the offer as made, omitting as it did the essential facts above recited was properly excluded— leaving undecided the question of its admissibility if the offer had contained the facts referred to. In this case, the evidence was admitted. And right here lies the distinction between the two cases; for we must apply that familiar rule—so frequently announced by the Court and so often overlooked by the profession—that this Court will make all reasonable intendments in favor of the ruling of the court below. Applying that rule, we must assume (the record being silent on that subject) that all the preliminary facts appeared—or at least that there was evidence tending to establish them—so far as the same were necessary to make the evidence admissible. Hence error in the ruling does not appear; for with the preliminary evidence in the case— the evidence which was lacking in the Clark case—we think the deed was admissible.

*Judgment affirmed.*

PETITION FOR. NEW TRIAL.

The defendant seeks a new trial on the ground of newly dis-
covered evidence. Attached to the petition therefor is the
affidavit of one Erwin Roberts, from which the following facts
appear: When Roberts was a boy, he lived on 47, Fifth, for
about seven years—until he was sixteen years old. In 1881 or
1882, he bought Lots 47, 37 and 38, all in the Third Division,
and later moved on to 47, Third, and built a house thereon. He
lived there and in that vicinity about eight years. The year
he bought the lots aforesaid, he surveyed them and ran the lines
around them. He then located the line between 51 and 47,
Third, and traced it. The south-west corner of 51 was then
standing, and was indicated by a spruce stub which was marked.
He then placed several large stones around the stub. He fol-
lowed the south line of 51 which was then indicated by old
marked trees. At one point in this line, and nearly opposite the
house of one Morocco, who then owned and occupied the south
part of 51, he found a hemlock stump which Morocco pointed out
to him as the south-west corner of her land. He re-marked this
point with a stake and stones. On January 9, 1909, he went
with the petitioner and his counsel, Mr. Fish, to the premises and
then found the stone piles and some of the marked trees, and
pointed them out to his companions.

That he did in fact find and point out stone piles and marked
trees in the vicinity of the disputed line is corroborated by the
affidavits of the petitioner and Mr. Fish. That the line thus
fixed puts all the cutting complained of (except a little wood
and brush) on to the petitioner's land appears from his affidavit.

From a careful examination of all the evidence presented, we
think the petition ought to prevail, and that there is a reasonable
probability that a retrial will produce a different result.

*Petition sustained, with costs; judgment reversed; verdict
set aside; and cause remanded for new trial.*