STATE *v.* BERT KELSIE.

May Term, 1919.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed October 9, 1919.

*Criminal Law—Expert Evidence—Test as to Mental Responsibility—Imbecility—Cross-examination.*

In a prosecution for murder, defended on the ground that the respondent was insane, where respondent's expert had testified that the respondent, who was then nearly thirty-four years old, had only the mentality of a child eight years old, it was not error to exclude the statement that the witness regarded the respondent as an imbecile, since the statement would have added nothing to his testimony as given.

The law makes no distinction between imbecility and insanity in the matter of criminal responsibility and in all cases where the criminal responsibility of the defendant is in issue, the test is: Did the accused, as applied to the act in question, have the mental capacity to understand the character, consequences, and quality of such act, and successfully to resist the impulse to do it?

A witness may be cross-examined in respect of his examination in chief in all its bearings, and as to anything that tends to explain, characterize, or modify what he has therein stated.

Where the respondent's expert in direct examination testified fully as to his examinations and tests of, and the mental and physical symptoms and condition of, the respondent, it was proper cross-

examination to ask the witness if, in his examinations of the respondent, he discovered any signs of epilepsy, although specific reference to epilepsy was not made in his direct examination.

INDICTMENT for murder. Plea, not guilty. Trial by jury at the September Term, 1918, Orleans County, *Wilson,* J., presiding. Verdict, guilty of murder in the first degree. The respondent excepted. The opinion states the case.

*Walter H. Cleary* for the respondent.

*Frank D. Thompson,* State's Attorney, for the State.

Mere weakness of mind, or the possession of an intellect of an inferior order, is not of itself sufficient to excuse the perpetration of a criminal act. 14 R. C. L. 603; *Rogers* v. *State,* 128 Ga. 67, 10 L. R. A. (N. S.) 999, and note; *Patterson* v. *People,* 46 Barb. 625; *Wartena* v. *State,* 105 Ind. 445, 5 N. E. 20; *Dean* v. *State,* 105 Ala. 21, 17 South. 28.

POWERS, J.   This respondent has been convicted of murder of the first degree, and brings up for review the record of his trial.  He presents but two questions, both of which relate to the admissibility of evidence.

1.  It appeared that the respondent was, for a time, under the professional and expert observation of Dr. James C. O'Neil at the Vermont State Hospital at Waterbury, having been sent there for that purpose by order of court.  The respondent called Dr. O'Neil as a witness, and having qualified him as an expert in mental diseases, and having shown by him the examinations, observations, and tests to which the respondent was subjected, he drew from the witness the statement that as a result, the doctor reached the conclusion that the respondent, who was then nearly thirty-four years of age, had only the mentality of a child eight years old.  The witness was then asked how, from a medical standpoint, an adult of that mentality is classed, and replied, "As an imbecile."  On motion by the State, this answer was stricken out, and the respondent took no exception.  He was then asked, "From your observations and tests, Doctor, what would you say Mr. Kelsie is?"  This question was objected to by the State, was excluded by the court, and the respondent excepted.

Assuming for the purposes of this discussion that it was sufficiently apparent that the witness would have answered that he regarded the respondent as an imbecile, the ruling was without error. Such an answer would have added nothing to the testimony of the doctor, as given. He was allowed to give, and did give, during his examination and cross-examination a very clear, comprehensive, and intelligent account of the various tests that were applied to the accused to determine his physical condition and his mental development, together with his responses and reactions, and from it all gave his conclusion that the accused was mentally and morally an eight year old boy. The purpose of this evidence is apparent. At common law an infant under the age of seven years was conclusively presumed to be incapable of committing a crime. Between seven and fourteen, he was presumed to be incapable, but the fact might be shown otherwise. Above fourteen, he was presumed to be capable, but this presumption was rebuttable. 14 R. C. L. 264. So if common-law rules were to be applied, the respondent had by this evidence, if believed, raised a presumption of his incapacity, and made a jury question of it. If the witness had added that he regarded Kelsie an imbecile, the statement would have afforded the jury no additional aid in estimating the man's mentality. For the term "imbecile" has no fixed meaning in the law, and would require definition by the witness to ascertain the meaning which he ascribed to it. There are grades of imbecility, just as there are grades in insanity, and in the matter of criminal responsibility, the law makes no distinction between imbecility and insanity. 2 Bouvier (Rawle's 3d Rev.) 1492. The test of the law in all cases is: Did the accused, as applied to the act in question, have the mental capacity to understand the character, consequences, and quality of such act, and successfully to resist the impulse to do it? *Rogers* v. *State,* 77 Vt. 454, 61 Atl. 489; *State* v. *Kelley,* 74 Vt. 278, 52 Atl. 434. It is quite apparent from the record that Dr. O'Neil would have meant no more by characterizing Kelsie as an imbecile than that he had only the mental capacity of an eight year old boy.

2. Dr. Gaines was a witness for the defence, and testified that when the respondent was a child he treated him for epilepsy. When Dr. O'Neil was under cross-examination by the State's attorney, he was asked if in his examinations of the respondent he discovered any signs of epilepsy, and subject to exception he

replied that he did not.  The only objection made to this question and answer was that the respondent did not examine the witness regarding epilepsy.  But the rule that the cross-examination is circumscribed by the direct examination does not mean that a cross-examiner is limited to the specific inquiries of the examiner.  A witness may be cross-examined in respect of his examination in chief in all its bearings, and as to anything that tends to explain, characterize, or modify what he has therein stated.  *Stiles* v. *Estabrook,* 66 Vt. 535, 29 Atl. 961; *Clark* v. *Gallagher,* 74 Vt. 331, 52 Atl. 539; *Goodwin* v. *Barre Sav. B. & Tr. Co.,* 91 Vt. 228, 100 Atl. 34.  The mental and physical symptoms and condition of the respondent were the most prominent features of the direct testimony of this witness.  Anything germain to those subjects and pertinent to the questions involved in the trial was a proper matter of inquiry in cross-examination.  Specific reference to epilepsy in the examination in chief was not necessary to make proper in cross-examination the question objected to, and this ruling, too, was without error.

*Judgment that there is no error in the proceedings, and that the respondent takes nothing by his exceptions.  Let sentence pass and execution be done.*