WILLIE WASHINGTON, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.
85 N. W. 2d 275

Filed October 18, 1957. No. 34175.

*Joseph M. Lovely, Adolph Q. Wolf,* and *Thomas J. Walsh,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, and *Cecil S. Brubaker,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

Defendant was charged with the crime of first degree murder. He was found guilty. The jury fixed the penalty at imprisonment for life. Defendant brings the case here on one assignment of error, to wit: "That the trial court committed reversible error in instructing the jury that they might consider the evidence introduced as to the 'defendant's level or degree of intelligence' solely in connection with their determination of the penalty to be imposed by them in the event they were to find the defendant guilty of murder in the first degree."

We reverse the judgment of the trial court and remand the cause for a new trial.

The issue presented does not require a detailed statement of facts. Defendant, who testified in his own behalf, lived in a two-room apartment at Omaha with one Edith Johnson, not his wife. On the early evening of the night involved, defendant and Johnson had been drinking whiskey and were preparing to play dominoes. One Thompson, hereinafter called the deceased, came to the apartment, knocked, and was allowed to enter. He was boisterous, profane, and obscene. He was asked to leave and refused to do so. Defendant claims that deceased attacked him and cut his hand with some sharp instrument. Defendant got a .22 caliber single shot rifle out of the bedroom and

"put it on" deceased. Deceased then started toward him. Defendant shot him, the bullet entering the head at the apex of the nose. Deceased fell to the floor. Deceased was pulled outdoors onto the porch. Deceased tried to get up. Defendant got the rifle, reloaded it, and shot deceased a second time, the bullet entering the right side of the head. The two wounds caused the death.

Defendant then went to tell some relatives what had happened. Johnson scrubbed the floor to remove blood stains and found the keys to deceased's car. Defendant came back in about 45 minutes. He and Johnson pulled deceased's body along the ground to deceased's car, put it in the car, drove the car to another street, parked it, returned home on foot, and went to bed.

The defense was self-defense.

Defendant offered the testimony of a psychologist who testified that he had given defendant the standard tests; that defendant, who was 39 years of age, had the mental level of a child of 8 years with an intelligence quotient of 50 (100 being normal); and that a person of defendant's level of intelligence would have "inferior thinking capacity and inferior judgment."

The trial court instructed the jury that: "In this connection evidence was produced upon behalf of the defendant pertaining to the defendant's level or degree of intelligence. You are instructed that the defendant's level or degree of intelligence is not a defense and may not be considered by you as a defense to the crime of first degree murder, of second degree murder, or of manslaughter as charged against him in this case; however, such evidence was admitted and may be considered by you solely in connection with your determination of the penalty to be imposed by you in the event you find the defendant guilty of murder in the first degree."

It is the contention of the defendant that the jury was not allowed to consider his mental condition to determine whether or not he acted with the deliberation

and premeditation required to constitute the crime of murder in the first degree.

We have held that a person, though of weak mind, but with sufficient capacity to distinguish right from wrong in respect to the particular act charged, is accountable for his acts. Anderson v. State, 25 Neb. 550, 41 N. W. 357. See Thompson v. State, 159 Neb. 685, 68 N. W. 2d 267.

The rule is stated generally that "* * * subnormal mentality is not a defense to crime unless the accused is by reason thereof unable to distinguish between right and wrong with respect to the particular act in question." Annotation, 44 A. L. R. 586. See, also, 26 Am. Jur., Homicide, § 77, p. 209; 40 C. J. S., Homicide, § 4, p. 825.

No evidence is found, expert or otherwise, contending that the defendant at the time of the act charged was unable to distinguish between right and wrong. For cases where that situation existed, see, State v. Roy, 40 N. M. 397, 60 P. 2d 646, 110 A. L. R. 1; People v. Perry, 195 Cal. 623, 234 P. 890; McKenny v. State, 105 Tex. Cr. 353, 288 S. W. 465; Craven v. State, 93 Tex. Cr. 328, 247 S. W. 515; and Jones v. State, 213 Ark. 863, 213 S. W. 2d 974 (where, as here, a plea of insanity was not interposed). See, also, Commonwealth v. Howell, 338 Pa. 577, 13 A. 2d 521; State v. Kelsie, 93 Vt. 450, 108 A. 391; State v. Noel, 102 N. J. L. 659, 133 A. 274.

In this case the defendant took the witness stand and on direct and cross-examination testified in detail to the events of the day, his work, his visits to taverns, his experiences at home, and as to what was said and done before the fatal shooting.

Language in Banks v. State, 133 Tex. Cr. 541, 112 S. W. 2d 745, on motion for rehearing, seems applicable here. It is: "So far as the facts reveal his testimony was clearly and intelligently given, and if accepted by the jury as true made out a complete and perfect defense of accidental killing. It can not be denied that

such defense would have perhaps been impaired if coupled with the defense of insanity. It is scarcely compatible with ordinary experience that one can remember and detail all the circumstances of a transaction, and at the same time be crazy to the extent of being excusable in the eyes of the law."

In Maulding v. Commonwealth, 172 Ky. 370, 189 S. W. 251, the court cited with approval this language: " 'There is no law which will excuse or palliate a deliberate murder on the ground that the perpetrator of it is unlearned, passionate, ignorant, or even of weak mind, unless the weakness of mind amounts to such a defect of reason as to render him incapable of knowing the nature and quality of his act, or, if he does know it, that he does not know it is wrong to commit it.' "

It follows under the evidence here that the trial court did not err in instructing the jury that the defendant's level or degree of intelligence was not a defense.

However, that does not answer the question presented here. The issue here goes to the limitation which the court put upon the evidence of defendant's degree of intelligence in that it could be considered "solely" in connection with the determination of the penalty.

In the instruction defining terms used, the court instructed the jury that: " 'Deliberate and premeditated malice' exists when an intention to take life unlawfully is deliberately formed in the mind and such taking of life is meditated upon before the fatal injury is inflicted. The existence of this frame or condition of mind, if it does exist, being a necessary element for conviction of murder in the first degree, must be found by the jury from the evidence, as any other essential element in the case, that is, beyond a reasonable doubt; and, in passing upon this issue, the jury may consider the evidence as to the acts, language, and conduct of the defendant *in connection with all other facts and circumstances in evidence.*" (Emphasis supplied.)

In the instruction as to intent the court advised the

jury as follows: "In determining the guilt or innocence of the defendant, either of the crime or (sic) murder in the first degree or murder in the second degree, it is for you to determine from *all the facts and circumstances in evidence* whether or not the defendant committed the act complained of, and whether at such time he had such criminal intent." (Emphasis supplied.)

The court also instructed the jury that: "The law presumes the defendant to be innocent until he is proven guilty by the evidence beyond a reasonable doubt. The law allows him to testify in his own behalf and you should fairly and impartially consider his testimony together *with all of the other evidence in this case.* (Emphasis supplied.)

The instructions are not challenged here. The court, having given the jury broad powers in considering all the evidence in these matters, by the challenged instruction took from their consideration, save on the question of the penalty, the uncontroverted evidence of the level or degree of intelligence of the defendant. The question is: Was that prejudicial error?

The record does not present the question as to whether the court should have instructed affirmatively on that issue, but does present the question of the withdrawal from the jury's consideration of that evidence.

In Hopt v. People, 104 U. S. 631, 26 L. Ed. 873, the court said: "But when a statute establishing different degrees of murder requires deliberate premeditation in order to constitute murder in the first degree, the question whether the accused is in such a condition of mind, by reason of drunkenness or otherwise, as to be capable of deliberate premeditation, necessarily becomes a material subject of consideration by the jury."

We cited this case with approval in O'Grady v. State, 36 Neb. 320, 54 N. W. 556, as a "humane" rule.

In People v. Moran, 249 N. Y. 179, 163 N. E. 553, the court of appeals stated the rule as follows: "Feebleness of mind or will, even though not so extreme as to

justify a finding that the defendant is irresponsible, may properly be considered by the triers of the facts in determining whether a homicide has been committed with a deliberate and premeditated design to kill, and may thus be effective to reduce the grade of the offense."

Although there is divided authority on the matter, we adhere to the reasoning of the above rules. See 40 C. J. S., Homicide, § 4, p. 825.

The evidence here discussed was admitted over objection of the State. However, if such evidence is for the consideration of the jury, it is properly admissible, subject to the usual rules. In effect we so held in O'Grady v. State, *supra.* In Latimer v. State, 55 Neb. 609, 76 N. W. 207, 70 Am. S. R. 403, we held: "The doctrine of this court is that while voluntary intoxication is not of itself a complete defense for one who is charged with the commission of a crime, still the evidence that the accused was intoxicated when it is alleged he committed the crime is admissible as a circumstance tending to show that the act of the accused was not premeditated."

In Battalino v. People, 118 Colo. 587, 199 P. 2d 897, the court held that evidence of mental derangement short of insanity was admissible, not for the purpose of seeking an acquittal, but to prove absence of deliberate or premeditated design. The court held that the basis of the admissibility is the relevancy to deliberation and premeditation. It quoted with approval from 26 Am. Jur., Homicide, § 105, p. 229, as follows: "However, evidence of insanity, or rather, evidence of the condition of the mind of the accused at the time of the crime, together with the surrounding circumstances, may be introduced, not for the purpose of establishing insanity, but to prove that the situation was such that a specific intent was not entertained—that is, to show absence of any deliberate or premeditated design." See, also, Becksted v. People, 133 Colo. 72, 292 P. 2d 189; People

v. Baker, 42 Cal. 2d 550, 268 P. 2d 705; Hernandez v. State, 43 Ariz. 424, 32 P. 2d 18.

We conclude that the trial court erred in giving the instruction here considered. That the error was prejudicial is self-demonstrative.

The judgment of the trial court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.