# T. R. STILES v. WARREN ESTABROOK.

## January Term, 1894.

*Right to cross examine. Special finding. Evidence.*

1.  It is the legal right of a party to cross examine an adverse witness upon all matters growing out of the direct examination; and where the witness has testified to the location of a fence he may be inquired of as to the position of a tree by which other witnesses had sought to fix the location of the fence.

2.  The issue was as to the location of the division line between the plaintiff and defendant. Both parties claimed that a certain fence had formerly stood upon the true line, but differed as to the location of this fence. The plaintiff did not pretend that he had occupied any farther than to this line. *Held*, that a finding of the jury that the plaintiff had acquired title to the disputed tract by adverse possession, amounted to nothing more than a finding that the fence had stood where the plaintiff claimed.

3.  Although both parties conceded that the true line ran from a given point in the line of Railroad street at right angles to that street , evidence of the actual location of the line was nevertheless material, for it might not be possible to determine exactly from those *data* the survey of the line.

4.  It appearing that the lines of the plaintiff's lot were established as a part of one survey, evidence of the location of the other lines is material, as bearing upon the location of the one in dispute.

Trespass *quare clausum*. Plea, the general issue. Trial by jury at the June term, 1893, Caledonia county, Taft J., presiding. The jury returned a general verdict for the plaintiff with special findings, and upon this verdict the

court gave judgment for the plaintiff. The defendant ex-
cepts.

*Dunnett & Nelson* for the defendant.

What the defendant proposed to ask the witness Guyer
on cross examination grew out of the direct examination,
and it was his legal right to ask it. *Wood* v. *Willard* 37
Vt. 390 and note; *Powers* v. *Silsby, et al.,* 41 Vt. 288.

*Harry Blodgett* and *W. P. Stafford* for the plaintiff,

The finding of the jury that the plaintiff had title by ad-
verse possession renders the exceptions of the defendant
immaterial. *Burnham* v. *Jenness* 54 Vt. 272.

The conduct of the cross examination was wholly within
the discretion of the trial court. *Carpenter* v. *Willey,* 65
Vt. 174; *Cory* v. *Hart,* 63 Vt. 424; Greenl. Ev., ss. 445,
447.

TYLER, J. The plaintiff and defendant owned adjoin-
ing premises situated on the west side of Railroad street in
the village of St. Johnsbury, extending westerly from
that street about sixteen rods to Pearl street, which is nearly
parallel to Railroad street, both streets running substantially
north and south. The defendant's premises are next south
of the plaintiff's, and the controversy related to the division
line between them. It was conceded that a certain mark in
the stone curbing on the west side of Railroad street was the
true boundary at that point, and that the division line be-
tween the parties' lands ran westerly from this point at right
angles with Railroad street. The plaintiff claimed that the
true line was a straight line from that point to a certain stake
on Pearl street, while the defendant claimed that it was a
straight line from the same starting point to a certain stone
on Pearl street twenty-two inches further north. The plain-

tiff's evidence tended to show that in 1864 a fence was built along the true line from Pearl street easterly as far as the west end of the ell of the house on the north side of the defendant's premises, and that a connection was there made with the ell by a short piece of fence going south, and that there was nothing further to mark the line except about one rod of fence from near the northeast corner of the main body of the house on the defendant's lot easterly to Railroad street, which was in line with the first mentioned fence, and that the line so marked was parallel with the jet of the eaves of the same, and one, two, three or four inches north of the jet, and that the fence had been substantially maintained in the same place with the original posts, down to 1892, and that the plaintiff and his grantors had occupied during all that time up to the fence, and that the fence was on the line as claimed by him, and that the fence ran south of an existing elm tree, and that two fence posts which were cut off at the surface of the ground in 1892 about        feet east of Pearl street, were parts of the original fence, or two posts that had been placed in the line at some subsequent time when the fence had been repaired and on the true line. The defendant's testimony tended to show that the fence from Pearl street was built on the true line and on the line as claimed by the defendant, and on the line parallel with the north line of his house and eaves, and that he in 1876 moved his barn near the line and caused the old fence on Pearl street east to be all removed and a bank wall to be built in 1877 from Pearl street east some twenty-five feet next the line of his own land, and that in 1883 or 1884 he built a store-house near the line further west than the barn, and, in order to prevent people from passing through, he built an irregular, crooked fence from the northwest corner of the store-house to near the east end of the bank wall, and that the two fence posts were put in by him at that time, and were not on the line or a part of the original

fence, and that the original fence ran just south of an elm tree which formerly stood some twenty or thirty feet east of Pearl street and just north of the existing elm tree and further east.

The locality of the fence was in dispute, each party insisting that it was upon the line claimed by him. The plaintiff claimed that it ran south of the elm tree now standing, while the defendant claimed that another elm tree had stood a little further north than the present one, but had been removed, and that the fence had run south of that and north of the present one. Guyer, a witness for the plaintiff, testified to the locality of the fence from having seen it when he was building a wall in 1877 on the east side of Pearl street up to a point in the line in controversy. On cross examination the defendant offered to show that at the time about which the witness had testified Lawrence & Wood used a derrick, and that a guy came off from it and was fastened to a certain elm, which the defendant claimed was the one that had been removed.

The trial court excluded the testimony on the ground that it was not proper cross-examination, and said to the counsel, "You may show that when your time comes." It is alleged that in this ruling there was error. If the testimony offered related to the matter inquired about in the examination in chief, it was legitimate cross examination. If it was new matter, not growing out of the direct examination, then it was matter of defence and the court might, in its discretion, require the defendant to defer it until the evidence in defence was produced.

The rule in the federal and in many of the state courts is that a party has not a right to cross examine a witness except as to facts and circumstances connected with the matters stated in his examination in chief; and that if he wishes to examine the witness in respect to other matters he must do so by making the witness his own and calling

him as such in the subsequent progress of the case. I Greenl. Ev. s. 446; *Carpenter* v. *Willey*, 65 Vt. 168. But a witness may be cross examined in respect to his examination in chief in all its bearings, and as to whatever goes to explain or modify what he has therein stated. Thomp. on Trials, s. 406. If a witness should testify that he once saw an ancient fence in a certain locality, clearly he might be asked on cross examination whether there was a row of trees beside the fence, and if so, on which side it was. An inquiry as to the locality of the fence with reference to fixed objects near it would be a part of the *res gestae* of the direct testimony. The proposed inquiry seems to have been connected with and to have grown out of the examination in chief. The inquiry was also legitimate as testing the veracity and memory of the witness.

The length of cross-examination upon a given subject is always within the control of the court, but when a witness has been examined in chief the other party has a right to cross examine him. 1 Greenl. Ev. s. 445. There was error in the ruling, and the error was not cured by the permission to the defendant to put in the offered evidence as a part of the defence, for it was the right of the defendant to have the chief and cross examinations placed in direct contrast before the jury.

The piece of land in controversy was twenty-two inches wide at the east side of Pearl street, and ran to the conceded point on the west side of Railroad street. The jury found by a special verdict that the plaintiff had acquired title to the land by adverse possession. Was this finding decisive of the case? The plaintiff did not claim to have occupied adversely or otherwise further south than the line indicated by the fence. The case does not show that he made any claim to the land irrespective of the fence. He claimed that the fence had stood on the south side of the land, and that he had occupied to it, and the defendant claimed that it had

stood on the north side.    Both parties claimed that the fence
had stood on the line, but they differed as to the local-
ity of the fence.    The finding was in effect that the plaintiff
had acquired title by adverse possession as far south as
where the fence had stood, and therefore was not conclusive.

The plaintiff contends that a line run from the conceded
point on Railroad street at right angles with the street is the
true line between the lots, and that other evidence than that
obtained from the compass is immaterial.    In the deed from
Lawrence to Alden, dated August 18, 1855, of the eastern
half of the plaintiff's present lot, the west line of Railroad
street is north 21 degrees east, and the side lines of the lot are
north 70 degrees west, and the lot is described as five rods
wide.    Upon the concession that the true line was one pro-
jected from the conceded point at right angles with the
street, there is difficulty in ascertaining that line at the pres-
ent time.    It is common knowledge among surveyors that
in ascertaining the locality of an old line an allowance must
be made for the variation of the magnetic needle, and that
that allowance is not a matter of exact computation.    The
variation is different in different localities.    In running this
line from the conceded point the parties came out twenty-
two inches apart on Pearl street; hence both relied upon the
fence as indicating the true division line.

The real question, therefore, was in respect to the locality
of the fence.    On this question the defendant offered evi-
dence tending to show the locality of the southwest corner
of his lot and his entire south line; also evidence tending
to show that a fence that stood on the north side of the plain-
tiff's lot was an established monument, and that measuring
from that to the plaintiff's south line, as claimed by the de-
fendant, the plaintiff had the five rods in width to which the
deeds entitled him.

All the lines of the plaintiff's lot were made by one survey
and had reference to each other.    The north line was not a

disconnected and immaterial fact, but it bore such relation to the south line as to render it material as tending to show the true locality of the latter, which was the line in dispute. The side lines, which seem to have been parallel with the disputed line, would have a tendency to aid the jury in determining the locality of the line which it was their duty to determine. In the exclusion of this evidence there was error.

*Judgment reversed and cause remanded.*

Rowell, J., did not sit, being engaged in county court.