J. J. GOODWIN, TRUSTEE OF THE BANKRUPT ESTATE OF THE CUT-
LER, STORER AND FAY CO. *v.* BARRE SAVINGS BANK AND
TRUST CO.

January Term, 1917.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed February 15, 1917.

*Evidence—Relevancy—Error not Prejudicial—Cross Examina-*
*tion—Error not Cured—Question for Jury—Exceptions—*
*When too General for Consideration—Instructions—Bank-*
*ruptcy—Assignment of Chose in Action—Notice to Debtor*
*—Rights of Trustee in Bankruptcy in Bankrupt Estate—*
*Banker's Lien—What Securities Subject Thereto—Contracts*
*—Exceptions When Transcript not Furnished.*

Evidence which throws any light on the question actually in issue is
admissible, though it relates to a matter not directly involved; and
so, when the issue was as to the terms upon which certain con-
tracts were turned over to the defendant by one who later became
bankrupt, the admission of evidence as to the terms under which
certain other contracts were assigned between the same parties was
not error.

In an action by a trustee in bankruptcy to recover the proceeds of cer-
tain contracts turned over by the bankrupt to defendant bank, any
error in the admission of evidence offered by plaintiff as to the
terms of the assignment of other contracts between the parties
is not prejudicial where plaintiff expressly disclaimed any advant-
age by way of recovery therefrom.

Where a witness testified on direct examination that the defendant
had no written assignment of a certain contract, it is proper to
show upon cross-examination that there was an oral assignment
of it to the defendant.

Error in the exclusion of evidence in defendant's cross-examination of
plaintiff's witness is not cured by allowing defendant to give the
evidence in its defence, for one has a right to have the direct and
cross-examination placed in direct contrast before the jury.

Where the issue is whether certain contracts were assigned to a bank
as collateral security, or only for purposes of collection, by a bank-

rupt corporation, evidence of the president of the bankrupt as to information obtained by him in regard to the probable cost of collecting the contracts, which was communicated to the bank, cannot be said to be too remotely relevant to be admissible.

A banker's lien does not apply where there is a contract, express or implied, inconsistent with such lien, nor when the circumstances or a particular mode of dealing are inconsistent with such lien.

Where there is evidence tending to establish an agreement inconsistent with a banker's lien claimed by defendant the question is for the jury.

An exception "to the refusal and neglect to charge as requested" is too general to require attention.

A charge that, when a person or corporation goes into bankruptcy everything stops as it is on that day, and that the bankrupt had nothing to do with its former business and no right thereafter to meddle with it, was not error, it being made clear that what was meant was that the rights of the parties were to be determined as of the date of the bankruptcy.

The assignment of a chose in action is not complete so as to vest the title as against the debtor, subsequent assignees and attaching creditors, until notice thereof has been given to the debtor; but as between the assignor and his assignee and those succeeding to the rights of the assignor notice to the debtor is not a prerequisite to the protection of the assignee.

A trustee in bankruptcy steps into the shoes of the bankrupt, and takes subject to equities and liens.

A banker has a lien on the securities and funds of his customer which come into his possession in the regular course of his business as banker, and has the right to set off any matured debt against such funds without direction or authority from the customer; and this lien and right of set off applies not only to a general deposit of the customer, but to any business paper belonging to him that is or may be the basis of credit, which he intrusts to the bank for collection, and to the avails thereof.

Contracts for the manufacture of granite monuments duly deposited with a banker as security or for collection, nothing more appearing, are subject to the banker's lien.

ASSUMPSIT, brought by plaintiff as trustee of the bankrupt estate of the Cutler, Storer and Fay Company, to recover the amount collected by defendant, after the bankruptcy, on two

contracts for the manufacture of granite monuments. Plea, the general issue. Trial by jury at the September Term, 1915, Washington County, *Waterman,* J., presiding. Verdict for plaintiff. Defendant excepted. The case is stated in the opinion.

*Richard A. Hoar* for defendant.

The admission in evidence of transactions in regard to other contracts than those upon which a recovery was claimed was error. These other contracts were entirely disconnected with the contracts in issue in this suit, and the admission of the evidence tended to mislead the jury. *Camp* v. *Averill,* 54 Vt. 320; *Lewis* v. *Barker,* 55 Vt. 21; *Clemmons* v. *Clemmons,* 68 Vt. 77; *Foster's Exr's* v. *Dickerson et al.,* 64 Vt. 248; *Nones* v. *Northouse,* 46 Vt. 587; *Gibson* v. *Vail,* 53 Vt. 476; *Walworth, Admr.* v. *Baron et al.,* 54 Vt. 677; *Whitney* v. *Bank,* 55 Vt. 154; *Tower* v. *Rutland,* 56 Vt. 28; *Harris* v. *Howard's Est.,* 56 Vt. 695; *Pictorial League* v. *Nelson,* 69 Vt. 162; *Town of Dover* v. *Winchester & Haynes,* 70 Vt. 418; 3 Chamberlayne, Modern Law of Evidence, Sec. 1748, note 4.

A bank has a general lien on all moneys, funds and securities of a depositor in its possession for the balance of the general account, and all funds which the bank has or obtains to his credit may be applied upon such general indebtedness until it is fully discharged without request or direction from the depositor and the funds thus applicable are not only the general deposit of the customer, but any business paper, notes or bills belonging to him, which he has entrusted to the bank for collection. Morse on Banks and Banking (4th ed.) Sec. 324 and notes.

The defendant bank had a lien upon the proceeds of the contracts, though collected after bankruptcy. Morse on Banks and Banking (4th ed.) Sec. 324(b) note 5; *In re Farnsworth,* 14 Am. Bank. Rep. 148; Collier on Bankruptcy (10th ed.) p. 976, note 26, p. 809, note 123, p. 810, note 124.

*S. Hollister Jackson* for plaintiff.

The evidence, to the extent admitted, of all five contracts, was evidence relating to what became a single transaction. Every fact that is a part of the same transaction as the facts in issue

is relevant, although it may not of itself be in .dispute.  *Aiken* v. *Kennison,* 58 Vt. 665; Stephen's Dig. Ev. 29.

A bank has no lien, even under the law merchant, unless it is shown that the collection is the property of the bank, which is not the case here.  Magee on Banks and Banking (2nd ed.) 298, 497; *Garrison* v. *Union Tr. Co.,* 139 Mich. 392; *Gibbons* v. *Hecox,* 63 N. W. 519.

The contracts here in issue are not "commercial paper" within the meaning of the decision which discusses a banker's lien.  Bigelow on Bills, Notes and Checks, Chap. 1, Sec. 1.

POWERS, J.  The plaintiff is trustee in bankruptcy of the Cutler, Storer & Fay Company.  He seeks to recover the amount collected by the defendant since the date of the adjudication, August 5, 1914, on two certain monument contracts placed in its hands by the bankrupt prior to that date.

The bankrupt was engaged in the granite business in Barre, and for some years had been making monuments for William Adams & Son, retail dealers in Lexington, Ky.  The business was done in this way:  Adams & Son would sell a monument to a customer under a written contract, and would engage the bankrupt to manufacture and supply it under a written contract, assigning to the bankrupt the customer's contract as security. Five such contracts came to the bankrupt, and five monuments were manufactured and delivered by it thereunder.  These contracts were respectively called the Wallingford, Redwine, Mulligan, Bowyer and Willett contracts.  After the monuments called for thereby were shipped, the Wallingford and Redwine contracts were formally assigned by the bankrupt to the defendant as security for certain notes held by the defendant against the bankrupt.  Later, and before the bankruptcy, the other three contracts were turned over to the defendant, but the parties disagree as to the arrangement under which this was done.  The plaintiff claimed, and his evidence tended to show, that, for the purpose of saving expense, these three contracts were placed in the defendant's hands for collection, only.  The defendant claimed, and its evidence tended. to show, that the three contracts were orally assigned to it by the bankrupt as security for a large indebtedness then outstanding.

The amounts due under the Willett and Bowyer contracts

were collected by the defendant after the adjudication of bankruptcy, and have not been paid over to the trustee.

The defendant seasonably objected and excepted to the admission of the evidence regarding the contracts not covered by the specification. on the ground that they were not involved in any way, and therefore the evidence was irrelevant and inadmissible. But evidence which throws any light on the questions actually in issue is admissible, though it relates to a matter not directly involved. Rob. Vt. Dig. 991. It was necessary to an intelligent understanding of the plaintiff's case for the jury to know about the Wallingford and Redwine contracts, how they were assigned to the defendant, and how they were handled by it. The record shows that considerable liberality was allowed the plaintiff in this matter, but he expressly disclaimed any advantage by way of recovery therefrom, and if any error was committed it was not prejudicial.

Mr. Drew, the defendant's treasurer, was a witness for the plaintiff. In his direct examination, he was asked if the defendant ever had a written assignment of the Mulligan contract and replied in the negative. In cross-examination, he was asked if the defendant had any agreement about it, and when he started to explain, objection was made by the plaintiff on the ground that this was not gone into in. the direct examination, and therefore it was not proper cross-examination. It was excluded and the defendant excepted. The partial answer given shows plainly that the witness was about to say that the defendant had an oral assignment of the contract specified. The relation assumed by the bank toward this contract was subject of inquiry in the direct examination. Therefore the excluded question was proper cross-examination, since it related to that subject matter, and tended to explain and modify it in an essential particular. *Stiles* v. *Estabrook,* 66 Vt. 535, 29 Atl. 961. Nor was the error in its exclusion cured by allowing the defendant to give the evidence in its defence. One has a right to have the direct and cross-examinations placed in direct contrast before the jury. *Stiles* v. *Estabrook, supra; State* v. *Hollenbeck,* 67 Vt. 34, 30 Atl. 696; *People* v. *Becker,* 210 N. Y. 274, 104 N. E. 396. The error was prejudicial, because it related to a vital feature of the defence. It had appeared that the Wallingford and Redwine contracts were assigned in writing. The other three contracts came to the defendant together. in the same way and under the same arrange-

ment. That this arrangement was an oral assignment was a fact of which the defendant should have been allowed to give evidence in the cross-examination of Mr. Drew.

Mr. Cutler, the president of the bankrupt, was allowed to testify concerning information obtained by him in Lexington in regard to the probable cost of collecting the contracts in question. To this the defendant excepted. We cannot say that this evidence was too remotely relevant to be admissible. The information thus obtained was communicated to the defendant and in some measure furnishes an explanation of why it was thought that expense would be saved by turning the contracts over to the defendant for collection.

At the close of the evidence, the defendant moved for a directed verdict, and excepted when that motion was overruled. In support of this exception, it is urged that the law gives the defendant a lien on the avails of these contracts for any debt it holds against the bankrupt, and that this lien exists even though the contracts were delivered to it for the purpose of collection only. But the plaintiff's evidence tended to show that it was expressly agreed that the defendant would not keep the money, but would turn it over to the bankrupt. Mr. Cutler testified that he told Mr. Drew, when the latter came to him and asked to have the two contracts here in question turned over to the defendant for collection to save expense, that he did not want to do it because he "was afraid the bank would gobble all the money," and he wanted it to pay to other creditors; and that Mr. Drew assured him that the bank would not keep the money, but would turn it over to him. Here, then, was an express agreement not to assert a lien. Against such an agreement a lien cannot stand. A banker's lien does not apply when there is a contract, express or implied, inconsistent with such lien. 1 Jones, Liens, §244. The lien does not apply when the circumstances or a particular mode of dealing are inconsistent with such lien. *Reynes* v. *Dumont*, 130 U. S. 354, 32 L. ed. 934, 9 Sup. Ct. 486. "It is familiar law," says Mr. Justice Brewer in *Joyce* v. *Auten*, 179 U. S. 591, 45 L. ed. 332, 21 Sup. Ct. 227, "that a bank receiving notes for collection is entitled, in the absence of a contract expressed or implied to the contrary, to retain them as security for the debt of the party depositing the notes." With evidence in the case tending strongly to establish an express agreement in-

consistent with a lien, the case was properly for the jury and the motion for a verdict could not prevail.

The defendant seasonably presented six requests to charge, and excepted "to the refusal and neglect to charge as requested." This exception is too general to require attention. *Seeley* v. *C. V. Ry. Co.*, 88 Vt. 178, 92 Atl. 28.

The court charged the jury that when a person or corporation goes into bankruptcy everything stops as it is on that day, and that this bankrupt had nothing to do with its former business and had no right to meddle with it thereafter. To this the defendant excepted. But there was no error here, for it was made clear to the jury that this instruction really and only meant that the rights of these parties were to be determined as of the date of the bankrutpcy; that the rights of the parties in these contracts as they then stood determined the case.

The court charged the jury that if, previous to the adjudication in bankruptcy, the Bowyer and Willett contracts were assigned by the bankrupt to the defendant, and notice thereof was given to Adams & Son, the plaintiff could not recover. To this the defendant excepted on the ground that no notice to Adams & Son was required to protect the assignment from this plaintiff. The instruction was erroneous. The rule is that the assignment of a chose in action is not complete so as to vest the title as against the debtor, subsequent assignees and attaching creditors, until notice thereof has been given to the debtor. But as between the assignor and his assignee, and those succeeding to the rights of the assignor, notice to the debtor is not a prerequisite to the protection of the assignee. 2 R. C. L. 622, 623; *Cogan* v. *Conover Manf. Co.*, 69 N. J. Eq. 809, 64 Atl. 973, 115 Am. St. Rep. 629; *Walton* v. *Horkan*, 112 Ga. 814, 38 S. E. 105, 81 Am. St. Rep. 77. This plaintiff steps into the shoes of the bankrupt, and takes subject to equities and liens. *Williams* v. *Noyes & Nutter Mfg. Co.*, 112 Me. 408, 92 Atl. 482, Ann. Cas. 1916 D, 1224; *Kimball* v. *Baker Land & Title Co.*, 152 Wis. 441, 140 N. W. 47; *Thompson* v. *Fairbanks*, 196 U. S. 516, 49 L. ed. 577, 25 Sup. Ct. 306; *Zartman* v. *First National Bank*, 216 U. S. 134, 54 L. ed. 418, 30 Sup. Ct. 368. And though no notice of the assignment had been given to the debtor, the contracts referred to would not pass to the plaintiff. *Muir* v. *Schenck*, 3 Hill (N. Y.) 228, 38 Am. Dec. 633; *Greey* v. *Dockendorff*, 231 U. S. 513, 58 L. ed. 339, 34 Sup. Ct. 166. The rule laid down by the

court imposed an unnecessary requirement upon the defendant, and, since the evidence tended to show that no notice wás given, amounted to the direction of a verdict.

The court also charged the jury that if the contracts in question were delivered to the defendant for collection merely, the plaintiff was entitled to recover. To this the defendant excepted on the ground that, even in the circumstances stated, the law gave it a lien on the contracts and the money collected thereon for its debt against the bankrupt.

By a peculiar rule of the law merchant, which has come down to us through the common law of England, (*Nash* v. *Harrington*, 2 Aikens 9, 16 Am. Dec. 672), a banker has a lien on the securities and funds of his customer which come into his possession in the regular course of his business as banker, and has the right to set off any matured debt against such funds without direction or authority from such customer. This lien and right of set off applies not only to a general deposit of the customer, but to any business paper belonging to him which he intrusts to the bank for collection, and to the avails thereof. 1 Morse, Banks, § 324; 1 Jones, Liens, § 244.

The general proposition is not questioned; but it is claimed by the plaintiff that a contract like those herein involved is not of such a character as to make it subject to this lien. Upon just what property belonging to a customer in the possession of a bank the lien will attach is a question involved in some obscurity. The old books speak of "money securities"; and some of "commercial paper." But it was said by Chief Justice Taney in *Bank of Metropolis* v. *New England Bank*, 1 How. 234, 11 L. ed. 115, that "it has been long settled that wherever a banker has advanced money to another, he has a lien on all paper securities which are in his hands for the amount of his general balance, unless such securities were delivered to him under a particular agreement." And this was approved in *Lehman Bros.* v. *Tallassee Mfg. Co.*, 64 Ala. 567. And to the same effect is *Buffalo County Nat. Bank* v. *Hanson*, 34 Neb. 455, 51 N. W. 1035.

*Tufts* v. *People's Bank & Trust Co.*, 59 N. J. Law 380, 35 Atl. 792, involved a paper in form a promissory note, but invalid as such. The defendant, the payee therein, indorsed the instrument for collection to the plaintiff bank, and the bank cashed it and charged it to the account of Knape, the one who appeared thereon as signer. Knape's signature was made by one McNeil.

and when Knape learned about it, he repudiated McNeil's authority to sign for him and refused to allow the charge against his account. Thereupon the bank sued for the money it had paid Tufts. It appeared that Knape owed Tufts the amount specified in the instrument, and it was held that the transaction amounted to an assignment of this debt and that the bank could lawfully offset it on Knape's account.

We think the contracts in question are "paper securities" within the meaning of the rule. The theory of the law is that a bank extends credit and accommodations to its customer in reliance upon the expectation that such paper will, from time to time, come into its possession and become available to it as security or off set. So any business paper,—paper that is or may be the basis of credit,—is and logically should be subject to the lien. While the books frequently speak of commercial paper, as the subject of this lien, it is not necessary that the paper received by the bank should possess the characteristics of commercial paper in order to come within the rule. Business methods change from time to time, and the exigencies of modern commercial affairs call for new schemes for obtaining credit. The record shows, and it is a matter of common knowledge, that contracts like those here involved are extensively used as a basis of credit in the granite industry. The banker's rights should not depend upon the form of the security he accepts, but upon the real character it assumes or is capable of assuming in commercial transactions. Such contracts, though not commercial paper in either the ancient or modern sense of that term, are business paper, and in a real sense "securities," since they are a potential basis of credit and available as a form of security. When duly deposited with a banker as security or for collection, —nothing more appearing,—they are subject to his lien for the general balance due him. The exception is sustained.

An exception was taken by the defendant to the charge on the subject of damages, but in the absence of the transcript we cannot say that it was erroneous.

*Judgment reversed and cause remanded.*