## GOGGIN v. BANK OF AMERICA NAT. TRUST & SAVINGS ASS'N.

No. 12206.

United States Court of Appeals
Ninth Circuit.

June 23, 1950.

Gendel & Chichester and Bernard Shapiro, Los Angeles, Cal., for appellant.

Samuel B. Stewart, Jr., San Francisco, Cal., Hugo A. Steinmeyer and Robert H. Fabian, Los Angeles, Cal., for appellee.

Before STEPHENS and POPE, Circuit Judges, and McCORMICK, District Judge.

STEPHENS, Circuit Judge.

A referee in bankruptcy allowed a claim filed in Chapter XI, 11 U.S.C.A. § 701 et seq., bankruptcy proceedings by Bank of America National Trust and Savings Association, herein called the Bank, overruling objections interposed by the receiver of the bankruptcy estate and denied the latter affirmative relief prayed. The district court adopted the findings of fact and conclusions of law of the referee and affirmed the order in toto. The receiver appeals.

For some time prior to the bankruptcy proceedings, Salsbury Motors, Inc., the debtor, had borrowed funds in various sums from the Bank pursuant to a loan credit arrangement and had maintained its major deposit account with the Bank. Salsbury had regularly delivered commercial paper to the Bank for collection with the understanding that the proceeds should be credited to its general deposit account. At the inception of these proceedings Salsbury owed the Bank some $600,000 on its loan account, and the Bank held several items for collection. In the aggregate these items amounted to the sum affirmatively prayed for by the receiver. Thereafter, with knowledge of Salsbury's intent and action herein, the Bank collected all of the items above referred to and applied the proceeds as credits upon Salsbury's indebtedness to it. Indeed, the Bank so acted as to one item after the petition in bankruptcy had been filed and after Salsbury by written notice had attempted to terminate the Bank's authority to collect such item. The claim of the Bank is for the amount allegedly due it in these circumstances while the claim of the receiver is that the money collected by the Bank upon such commercial paper after bankruptcy should be paid to him for the benefit of the estate. The referee's and the court's approval of the Bank's action was under authority of Section 3054 of the California Civil Code, which provides that: "A banker has a general lien, dependent on possession, upon all property in his hands belonging to a customer, for the balance due to him from such customer in the course of the business."

The banker's lien devolved to the common law from the law merchant. Its principle today appears almost universally in statutory form, but codification has not extended its scope. Berry v. Bank of Bakersfield, 1918, 177 Cal. 206, 170 P. 415.

The receiver contends that under the law merchant and the common law a right of lien in favor of a bank does not attach to commercial paper delivered to such bank for collection unless and until the bank extends credit thereon. While it was stipulated that as part of the sizable lending transactions above described "there was apparently an implied understanding between the Bank of America and the Debtor corporation that all of the usual banking transactions would be handled through the Bank of America" including the collection of promissory notes, sight drafts and bills of

lading,[1] it is argued here that there can be "no implication that the Bank relied upon the notes and drafts placed in its hands for collection only. Banks are well able to protect themselves when they lend money and are accordingly prone to set forth in their loan agreements the full security upon which they in truth rely. Where a bank actually extends credit upon the faith of notes and drafts, that credit will be evidenced either by a regular discounting procedure, by allowing the depositor to draw checks against anticipated collections, or by a pledge or other loan agreement. Where there has been no discounting and there has been no pledge, one may safely assume that there has been no extension of credit upon the faith of these securities." It is further stated that "there are many situations (such as a pledge for a specific indebtedness, property held in trust, property held in safe deposit boxes, property in escrow, etc.) where the banker's lien is inapplicable because no advances have been made upon the faith of this property."

The point in issue was ably briefed and argued by counsel before this court. Appropriately reference was made to the statutes and rules of decision of California where as above indicated provision is made by statute for the so-called banker's lien. However, no California case has been found which interprets such statute in the circumstances obtaining here. The referee herein expressly overruled appellant's objections to appellee's claim on the authority of a dictum in Gonsalves v. Bank of America, 1940, 16 Cal.2d 169, 105 P.2d 118.

The banker's lien as known to the law merchant and common law is a general lien effective by operation of law. Lord Kenyon early stated its principle in the leading case, Davis v. Bowsher [1794], 5 T.R. 488, 492, 101 Eng.Rep. 275, at p. 277: "* * * a banker has a general lien upon all the securities in his hands belonging to any particular person for his general balance, unless there be evidence to shew that he received any particular circumstances, which would take it out of the common rule. * * * wherever a banker has advanced money to another, he has a lien on all the paper securities which come into his hands for the amount of his general balance. * * * no person can take any paper securities out of the hands of his banker, without paying him his general balance, unless such securities were delivered under a particular agreement, which enables him so to do." In our opinion, Goodwin v. Barre Savings Bank & Trust Co., 1917, 91 Vt. 228, 100 A. 34, and Citizens' Bank & Trust Co. v. Yantis, Tex. Civ.App. 1926, 287 S.W. 505, from which we quote in the margin,[2] correctly state the mercantile theory involved.

1. The stipulation above mentioned was made by counsel for the receiver at a referee hearing upon appellee Bank's contention that there was no summary jurisdiction in the bankruptcy court to decide the questions involved in the receiver's objection to the Bank's claim and was in its entirety as follows: "That the Debtor herein in 1946 entered into a sizable lending transaction with the Bank of America in excess of $500,000. That during the year 1946 the average on collections made by the Bank of America on behalf of the Debtor was $40,000 to $50,000. That there was apparently an implied understanding between the Bank of America and the Debtor corporation that all of the usual banking transactions would be handled through the Bank of America and the deviations from that were minor and only for reasons of convenience with the knowledge and consent of the bank and the implied understanding included that as to collections of notes or sight drafts or bills of lading that they would be handled through the collection department of the Bank of America."

2. "The theory of the law is that a bank extends credit and accommodations to its customer in reliance upon the expectation that such paper will, from time to time, come into its possession and become available to it as security or offset." Goodwin v. Barre Savings Bank & Trust Co., 1917, 91 Vt. 228, 100 A. 34, 37.

"This doctrine [the banker's lien] is not dependent solely upon any express agreement, but arises by implication growing out of the relationship of the depositor and the bank. It is a wholesome rule, and presupposes that for such accommodations extended by the

We find nothing in Reynes v. Dumont, 1889, 130 U.S. 354, 9 S.Ct. 486, 32 L.Ed. 934, or In re Gesas, 9 Cir., 1906, 146 F. 734, which commits us to a different view. However, as the above quotation from the Davis opinion indicates, special circumstances may preclude the right of lien, for example, where the nature of the property in the banker's hands or the course of dealings or contract of deposit is inconsistent therewith. The statement of the rule in Section 3054, above quoted, properly emphasizes in the language of the law merchant that the property to be subject to the lien must belong "to a customer" and must come into the banker's hands "in the course of the business [of banking]." Pledged commercial paper or securities placed with a bank as collateral to secure particular debts are not subject. The lien does not attach to property in the bank's possession as escrow holder, trustee, custodian, or for any other special purpose. Problems arising where the property in the hands of the bank belongs to a third person and not to the person who places it in the hands of the bank are illustrated by cases like Bank of Metropolis v. New England Bank, 1843, 1 How. 234, 42 U.S. 234, 11 L.Ed. 115 [see footnote 4, infra].

The logical extremity of the receiver's position summarized in the above quotations from his argument, is the dissipation of any need for a general lien in favor of banks. It is said that the Bank should have written a lien provision into its lending agreement or must have discounted the commercial paper or received it as pledgee to be entitled to a lien because without such "there has been no extension of credit upon the faith of these securities." But in the situations suggested the banker has protection without the aid of a general lien which therefore is inapplicable.

It seems to us that the banker's lien clearly was intended to apply to this type of situation. Here there is no special purpose or agreement which is inconsistent with the lien provided as a matter of law.[3] The property belonged to a customer of the Bank who placed the property with the Bank and is here now through a representative asserting a paramount right to such property or its proceeds. None of the authorities relied upon by appellant hold to the contrary, but rather they are illustrative of the general principles stated above.[4] A careful review of the authorities and legal

bank the bankable paper delivered to it will stand charged with a lien upon the proceeds. * * * Since the lien is given upon the theory that any credit the bank extends to its customer by way of loan or overdraft is given on the faith that money or securities sufficient to meet the debt at its maturity will come into the possession of the bank to discharge the same, of course, in such a case no express agreement is necessary." Citizens' Bank & Trust Co. v. Yantis, Tex.Civ.App.1926, 287 S.W. 505, 507, 508.

3. "Cases where the lien ordinarily attaches are those where bills, cheques, or notes are paid into his bank by a customer to be collected and credited to his account." Chorley, Law of Banking (1938), p. 227.

"It is only in respect of securities received in the course of pure banking business, such as the collection of bills, that the lien exists." 5 Australian Law Journal 148, 149 (1931).

"* * * broadly it may be said that the bankers are entitled to a lien on all documents in relation to which they have active duties as bankers." 19 Washington Law Rep. 651 (1891).

4. The cases relied upon by appellant which are apposite may be collated as follows:
(1) As to situations where the property asserted to be subject to lien was in the hands of the bank pursuant to a special agreement or understanding which was incompatible with any right of general lien, see ——
(a) Where the property consisted of the contents of a safety deposit box, Brandao v. Barnett [1846] 3 C.B. 519, 136 Eng.Rep. 237;
(b) Where the property consisted of securities placed with a bank as collateral to secure a particular debt, Reynes v. Dumont, 1889, 130 U.S. 354, 9 S.Ct. 486, 32 L.Ed. 934; Berry v. Bank of Bakersfield, 1918, 177 Cal. 206, 170 P. 415;
(c) Where the property consisted of commercial paper placed with a bank solely for discount and credit [and the bank refused to discount], Bank of Montreal v. White, 1880, 154 U.S. 660, 14

writings on the subject convinces us that the referee and district court were correct.[5]

It is true that no credit upon specific items was given upon the delivery of any of the collection items to the Bank, nor had such credit been given or asserted prior to the institution of these proceedings. Of course, if before these proceedings were commenced the Bank had collected and credited the proceeds to Salsbury's general deposit account the sum of such proceeds would have reduced the total sum owing the Bank by the sum thereof through off-set. Such is not the case here.

■ The appellee Bank at the "date of cleavage," that is, when the bankruptcy proceedings were commenced and before collection of the commercial paper proceeds of which the receiver here claims, held such paper as agent of Salsbury, the owner thereof. We conclude that as of that time the Bank had a lien by operation of Section 3054 of the California Civil Code and that neither the bankruptcy proceedings

S.Ct. 1191, 26 L.Ed. 307; Hanover Nat. Bank v. Suddath, 1909, 215 U.S. 110, 30 S.Ct. 58, 54 L.Ed. 115;

(d) Where the property consisted of money received by a bank for a particular purpose [and not subject therefore to a right of off-set], In re Cummins Construction Corp., D.C.Md.1947, 72 F. Supp. 409, affirmed sub nom., Joseph F. Hughes & Co. v. Machen, 4 Cir., 1947, 164 F.2d 983; Della v. Home Bank of Porterville, 1930, 105 Cal.App. 106, 286 P. 1064; Powell v. Bank of America, 1942, 53 Cal.App.2d 458, 128 P.2d 123;

(2) As to situations where the bank became insolvent prior to the collection of commercial paper placed with it for such purposes and the bank's representative in answer to the customer's claim for the paper in specie or the proceeds thereof claimed the entire property interest in the bills by reason of discount, see Giles v. Perkins [1807], 9 East. 11, 103 Eng.Rep. 477; Thompson v. Giles [1824], 2 B. & C. 422, 107 Eng.Rep. 441. In each of these leading English cases, the issue framed was complicated by the English system of financing by overdrafts and it was held that, regardless of the variation used of such method of financing, uncollected time paper remained the property of the customer "although the banker may have a lien to the extent of his advances." Thompson v. Giles, supra, 107 Eng.Rep. at 445. No banker's lien was asserted for the good reason that no indebtedness was owing the bank;

(3) As to situations where a customer placed commercial paper with a bank for collection and the bank forwarded the paper to a correspondent bank which upon the forwarding bank's failure prior to collection claimed a lien upon such paper, in its hands for collection, to secure a prior indebtedness of the forwarding bank to it, see Bank of Metropolis v. New England Bank, 1843, 1 How. 234, 42 U.S. 234, 11 L.Ed. 115; ibid., 1848, 6 How. 212, 47 U.S. 212, 12 L.Ed. 409; Van Amee v. Bank of Troy, 1850, 8 Barb., N.Y., 312, 5 How.Pr. 161; McBride v. Farmers' Bank of Salem, 1857, 25 Barb., N.Y., 657. For a similar situation, see Russell v. Hadduck, 1846, 3 Gilman 233, 237, 8 Ill. 233, 237, 44 Am. Dec. 693. The primary consideration in such cases is whether the correspondent bank has "in its hands property *belonging to a customer*" as to which the lien could attach. Where the correspondent bank was unaware that an undisclosed principal and not the forwarding bank owned the paper, the lien has been allowed by some courts provided that the correspondent bank has extended new credit to the forwarding bank on the faith of the items forwarded for collection or has suffered a balance to remain upon the faith of their mutual dealings. See a good summation of this aspect of a banker's lien in Garrison v. Union Trust Co., 1905, 139 Mich. 392, 102 N.W. 978, 70 L.R.A. 615, 111 Am.St.Rep. 407, 5 Ann.Cas. 813. It suffices to say that our case does not concern a controversy between correspondent banks nor between a third person [not the customer] who claims ownership and the bank. At the date upon which the bankruptcy petition here was filed, the debtor owned the paper then held and not yet collected by the Bank.

5. It is of interest to note that none of the English treatises or digests in treating of banker's liens finds in the law or suggests any such qualification as appellant urges here upon the applicability of the banker's lien. See, e. g., Paget, Law of Banking, 5th Ed., 1947, pp. 319 and 336; Chorley, Law of Banking, 1938, p. 227; Minty, Law Relating to Banking and Foreign Exchange, 1936, p. 23; 3 Eng. Ruling Cases 587.

nor the attempt to terminate the agency could affect such lien. See Joyce v. Auten, 1900, 179 U.S. 591, 21 S.Ct. 227, 45 L.Ed. 332; In re Farnsworth, 1893, Fed.Cas. No. 4,673, 5 Biss. 223; Kane v. First Nat. Bank, 5 Cir., 1932, 56 F.2d 534, 85 A.L.R. 362.

■ Appellant finally contends that the effect of a banker's lien, if allowed in the circumstances obtaining here, would be a secret lien and preference contrary to the intent of Section 60, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. a. But, Section 67, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. b, expressly excepts statutory liens from the operation of Section 60, sub. a. The insistence that the collection items involved herein were accounts receivable subject to the provisions of Section 3019 of the California Civil Code is not tenable in view of the definition of "Account" in Section 3017 of such code. Compare Corn Exchange Nat. Bank & Trust Co. v. Klauder, 1943, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884, 144 A.L.R. 1189.

Affirmed.