CHARLES CLAY COOPER, DOING BUSINESS AS COOPER FARMS, APPELLANT, v. NEVADA BANK OF COMMERCE, A NEVADA CORPORATION, RESPONDENT.

No. 4883

June 22, 1965                                    403 P.2d 198

*Mann and Scott,* of Elko, for Appellant.

*Bradley & Drendel,* of Reno, and *Leo J. Puccinelli,* of Elko, for Respondent.

## OPINION

By the Court, BADT, J.:

Cooper sued in the court below seeking a judgment against the bank for conversion of money asserted to belong to Cooper. At the close of Cooper's case the bank moved to dismiss under NRCP, Rule 41(b). The motion was granted and Cooper appeals.

Cooper owned certain lands in Diamond Valley and leased portions thereof to Bailey under provisions which gave Cooper 10% of the proceeds of the crops raised. Bailey sold the crops and deposited the money with the bank. On November 4, 1963, Bailey's commercial checking account was overdrawn in the sum of $6,981.54, and he also owed an overdue note to the bank in the sum of $159,000. Upon receiving another deposit representing crop proceeds, the bank deposited $6,981.54 in Bailey's checking account, thereby closing it, and applied the remainder of this deposit and all other subsequent deposits to satisfy Bailey's overdue note obligation. Cooper then prevailed upon Bailey to write a check on the bank for $5,330.11 which they agreed was the rental then owed Cooper, but Bailey informed Cooper that the bank had closed out the account and that the check was not good. Nevertheless, Cooper presented the check to the bank and payment was refused. After making written demand on the bank, Cooper brought this suit for conversion.

The theory of Cooper's case (mainly brought out by calling the manager of the bank as an adverse witness) was that the bank knew the terms of the Cooper-Bailey lease agreements, of which there were five; knew that 10% (the percentage stated in two of the leases was later increased to 20%) of the gross yield belonged

to Cooper; knew that Cooper owned the land that Bailey was farming, and in particular had full knowledge of a certain release executed February 19, 1963, having to do with the payment of an obligation by the sublessees to Bailey. Following is the release signed by Bailey and Mr. Ballew, an officer of the bank:

"You are hereby authorized and instructed to pay unto Clay Cooper, on behalf of Cooper Farms, the sum of $1,521.08, which constitutes the amount due for landlord share of the receipts derived from the sale of crops from Cooper Farms' lands situate in Diamond Valley, Eureka County, Nevada during the crop season of 1962. It is understood and agreed that said amount is arrived at by the summary of potato sales made to and compiled by A. Levy and J. Zetner Co.

"It is further understood and agreed that the landlord's percentage of the receipts accruing from any additional sales of 1962 crops will be pro rated and paid in the usual manner."

When confronted with this release, Mr. Ballew testified that he knew by it and by the conversation at the time it was executed that Cooper and Bailey had some agreement between them but he was not aware that Cooper had an interest in the crop proceeds. He admitted only that he knew Bailey owed Cooper some money. He further stated that the "landlord's share" of the proceeds referred to in the release was concerned with terms under a sublease executed by Bailey and not the Bailey-Cooper lease. He could not define the term "paid in the usual manner" other than that he thought it meant payment by check or work performed.

There was another occasion in April, 1963, when Cooper met with Ballew to discuss the probability that the bank would continue to finance Bailey's operation. However, Ballew categorically denied that he ascertained that Cooper owned an interest in the crop proceeds.

Under these circumstances and other evidence to be discussed shortly, Cooper contends that the bank had sufficient knowledge of his interest in the crop proceeds to prevent them from applying these proceeds to satisfy Bailey's personal obligation owed the bank.

The majority rule is that where the bank, in which funds in which third persons have an interest are deposited in the individual name of the depositor, has neither actual knowledge nor knowledge of facts sufficient to put it upon inquiry concerning the third person's interest, it may apply the deposit to the individual debt of the depositor-debtor. Annot., 13 A.L.R. 324, supplemented by 50 A.L.R. 632; 10 Am.Jur.2d, Banks §676. In McStay Supply Co. v. Stoddard, 35 Nev. 284, 132 P. 545, this court said: "If a principal permits his agent to deposit money in the bank without any notice to the bank that the money belongs to the principal, and the agent checks out the money or subjects it to a lien, on account of any borrowing of money, then the principal and not the bank is the loser." Applying this language literally, it could be held that since Cooper did not inform the bank of his interest in the crop proceeds, the bank was justified in applying these proceeds to satisfy Bailey's outstanding obligation. However, this language was dicta and it should not be applied to preclude Cooper from recovering his interest in the proceeds if the bank had knowledge of facts sufficient to put them on inquiry of his interest. In determining whether the bank had knowledge of facts sufficient to put it on inquiry that Cooper had an interest in the proceeds, this court must view the evidence and the inferences drawn therefrom in a light most favorable to Cooper since the Rule 41(b) motion to dismiss was entered against him. Gunlock v. New Frontier Hotel Corp., 78 Nev. 182, 370 P.2d 682; Gordon v. Cal-Nevada Lodge, Inc., 71 Nev. 336, 291 P.2d 1054.

The bank knew that Bailey was growing crops on Cooper's land and that the two had an agreement concerning the rent. However, it was never proved and the bank denied that it knew the agreement gave Cooper an interest in the proceeds of the crop sales. If this were the only evidence before the court, it would be a close question whether the bank had knowledge of facts sufficient to impose upon it a duty of inquiry as to what interest Cooper had in the proceeds; especially since the inference that it had a duty to inquire is faced with the

equally logical inference that the Cooper-Bailey agreement contemplated a normal lump sum rental, and this inference is supported by Mr. Ballew's testimony that they had no idea that the agreement gave Cooper an interest in the crop proceeds deposited with the bank.

However, the complexion of the case is considerably changed when we consider the additional facts that the checks received as payment for the crops were made out to Bailey and the bank jointly; that Bailey allowed the bank to apply whatever part of the proceeds that was needed and reasonable to satisfy his personal debt owed the bank, the bank depositing the remainder in Bailey's general checking account; that Bailey never informed the bank of Cooper's interest in the proceeds; that Cooper admitted that Bailey had the right to sell the crops and receive the proceeds; and that Cooper never notified the bank of his interest in the proceeds. In light of all these facts, the inference which Cooper argues must be drawn, viz., that the bank knew of his interest in the bank account, is not permissible. The only reasonable conclusion is that prior to November 20, 1963, the bank did not have a duty to inquire whether Cooper had an interest in the crop proceeds since Bailey treated them as his own, and Cooper never notified the bank to the contrary.

However, after the written demand made by Cooper on November 20, 1963, demanding that the bank deliver to him "the land owner's rental proceeds from potatoes raised by the Bailey Brothers" and that such rentals "did not belong either to the Baileys nor the Bank," the bank was on notice that Cooper had an interest in any subsequent deposit representing crop proceeds. It knew or easily could have found out that the interest in such proceeds was 10% of the proceeds on land covered by three of the leases and 20% on land covered by two leases. The bank records indicate that the following receipts were had by the bank subsequent to the acquisition of its knowledge on November 20, 1963; namely, November 22, 1963, $1,023.22; December 3, 1963,

$1,022.70; December 12, 1963, $555.63. Following December 12, 1963, some additional deposits representing crop proceeds were received and credited against the note obligation owed by Bailey. However, the amount of these deposits and whether Cooper's interest was 10% or 20% of the crop proceeds received after November 20, 1963, cannot be answered by the information in the record. This determination must be made by the trial court.

It is, accordingly, ordered that the trial court order a new trial limited to a determination of the extent of the deposits representing crop proceeds received after November 20, 1963, and a determination of what percentage of such crop proceeds belonged to Cooper, and enter judgment accordingly. In all other respects the motion to dismiss is affirmed. Each party shall pay his own costs on appeal.

THOMPSON, J., and ZENOFF, D. J., concur.