## Terrence M. O'Donnell v. Bank of Vermont

[692 A.2d 1212]

No. 95-401

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed January 31, 1997

222

*Lisa Chalidze* of *Hull, Webber, Reis & Canney,* Rutland, and *Dustin F. Hecker* and *Andrea F. Nuciforo, Jr.,* of *Posternak, Blankstein & Lund,* Boston, Massachusetts, for Plaintiff-Appellant.

*Arthur P. Anderson* and *Mary P. Kehoe* of *Saxer Anderson Wolinsky & Sunshine, P.C.,* Burlington, for Defendant-Appellee.

**Johnson, J.** Plaintiff appeals from a summary judgment decision of the Windham Superior Court. He represents a group of investors who claim that defendant Bank of Vermont (Bank) improperly seized four certificates of deposit (CDs) that the investors claim to own. The Bank responds that the seizure was proper because the CDs actually belonged to a debtor of the bank that had defaulted on a prior loan. The trial court found that the investors did not own the CDs and granted summary judgment in favor of the Bank. Without addressing the question of ownership, we hold that principles of banking law entitled the Bank to set off the funds.[1]

This dispute has a complicated factual history. It involves a real estate joint venture between the group of investors and Timber Creek Construction Company (TCC), a real estate developer, that was apparently formed in 1987, although the agreement was not

---

[1] As we affirm the court's decision granting summary judgment in favor of the Bank, we do not address the Bank's argument that plaintiff lacks standing to bring this action.

reduced to writing and signed until January 1989. Under the agreement, the investors provided about $1.3 million dollars for the development of two tracts of land, one in Vermont and one in New Hampshire. The agreement named plaintiff as the escrow agent for the investors, and made him responsible for collecting the financial contributions of the investors and disbursing the funds to TCC. But according to the agreement plaintiff was "under no obligation or duty to inquire as to the nature of any disbursement by [TCC]." Moreover, once TCC received funds from the investors, there were "no restrictions on [TCC's] use or disbursement" of the money.

Despite the language giving TCC unfettered discretion in its use of the invested funds, the agreement also required TCC to establish, as security for the investment, a $500,000 CD with the Bank of Vermont. The funds would become the property of TCC after TCC fulfilled its contractual obligations. The agreement assigned plaintiff responsibility for setting up the CD, and stated that the account "shall require the signature of a [TCC] representative, [plaintiff] and a neutral third party before disbursement" to TCC.

Four separate CDs were established at the Bank between January and September of 1988 (before the joint venture agreement was actually signed), totalling slightly more than $500,000. Three of these CDs were designated as single-owner accounts in the name of TCC, and required for withdrawal the signatures of plaintiff, David Paul, the president of TCC, and a third party. A fourth CD was initially established in the name of these three signatories, but the name on the account was later changed to TCC. The account applications did not identify plaintiff as an escrow agent or explain that the three-signature requirement was for the protection of investors; indeed, on one of the applications, plaintiff signed as a representative of TCC. The funds for these CDs came from the investors, but plaintiff sent the checks to the Bank to deposit in the accounts. The letters accompanying these checks did not mention plaintiff's status as an escrow agent or refer to the investors or the joint venture agreement in any way. None of the correspondence gave any indication that plaintiff represented anyone other than TCC.

Meanwhile, David Paul's repeated representations to the Bank, which were made because TCC borrowed large sums from the Bank, indicated unambiguously that the CDs belonged to TCC. A letter sent by Paul to the Bank in June 1988 states that TCC would soon "have on deposit with the Bank of Vermont in Certificates of Deposit, $500,000. . . . [to] secure approximately half the loan [from the Bank

to TCC]." In September, TCC's attorney sent the Bank a copy of a resolution adopted by TCC's board of directors; the resolution authorized the $500,000 deposit with the Bank to be held as collateral for TCC's debt to the Bank. Paul also delivered the passbooks for the CDs to the Bank.[2] Finally, in October of 1988, Paul executed an "Assignment of Deposit," purportedly assigning the CDs to the Bank for its use in the event TCC defaulted on the loan. The document stated that TCC owned the deposits and had the right to assign them to the Bank.

TCC was consistently in default on its monthly loan payments, and there was no reduction of the principal after October 3, 1988. Moreover, only four property units (valued by the Bank at approximately $160,000 each) were available to secure a debt of over $900,000. In March 1989, Paul and the Bank agreed that the CDs would be used to reduce the loan principal. The Bank withdrew the money in the CDs, using withdrawal slips signed by a Bank officer and Paul, and applied the proceeds to TCC's debt. Plaintiff did not discover that the Bank had set off the CDs against TCC's loan until September 1989.

The parties filed cross-motions for summary judgment. The trial court held, as a matter of law, that TCC owned the CDs, and that the Bank therefore had the right to set off the CDs against TCC's indebtedness. This appeal followed.

■    This Court reviews a motion for summary judgment using the same standard as the trial court. *Hodgdon v. Mt. Mansfield Co.*, 160 Vt. 150, 158, 624 A.2d 1122, 1127 (1992). Summary judgment is appropriate only when the moving party has demonstrated that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3); *State v. G.S. Blodgett Co.*, 163 Vt. 175, 180, 656 A.2d 984, 988 (1995). In determining whether material facts exist for trial, we must resolve all reasonable doubts in favor of the party opposing summary judgment. *Hodgdon*, 160 Vt. at 158-59, 624 A.2d at 1127.

Plaintiff first maintains that the trial court improperly resolved material factual issues in ruling that TCC owned the CDs. Plaintiff relies on *Beacon Milling Co. v. Larose*, 138 Vt. 457, 418 A.2d 32 (1980), where we held that a bank account held jointly in the names of a husband and wife could not be charged to the husband's sole debts

---

[2] Plaintiff knew that the Bank held the passbooks, but apparently believed that Paul had given the passbooks to a bank employee for "safe keeping."

merely because his name was on the account. *Id.* at 460, 418 A.2d at 34. Instead, we remanded the case for the court to determine ownership of the account based on a number of evidentiary issues, including "the circumstances surrounding the creation of the account, the intention of the depositor or depositors, and the source or sources of the funds." *Id.* Emphasizing that the funds came from the investors, and that the accounts were created as security for his clients' investment, plaintiff argues that, at minimum, the question of ownership should have been resolved at trial.

■ Plaintiff may be correct that ownership of the CDs should not have been determined on summary judgment. The central issue in this case, however, is not who owned the CDs but whether the Bank had a right to set off the CDs against TCC's loan. We do not agree that the Bank's right to setoff turned on the question of ownership.

In general, a bank has the right to seize deposited funds to reduce or eliminate debts owed to it by the depositor. In Vermont the right to setoff derives from the contractual relationship between the depositor and the bank. See *Hale v. Windsor Sav. Bank*, 90 Vt. 487, 494, 98 A. 993, 996 (1916) (bank account is basis for contractual relationship between depositor and bank). By placing funds in an ordinary account, a depositor gives the bank legal title to them, and, absent a specific agreement to the contrary, becomes the bank's creditor up to the amount of the deposit. *Caledonia Nat'l Bank v. McPherson*, 116 Vt. 328, 330, 75 A.2d 685, 687 (1950). As titleholder, the bank has the right to apply the depositor's money to extinguish a matured preexisting debt. *Goodwin v. Barre Sav. Bank & Trust Co.*, 91 Vt. 228, 235, 100 A. 34, 34 (1917). In *Goodwin*, this Court described the bank's position as that of a lienholder on the customer's deposit. By virtue of this lien, the banker "has the right to set off any matured debt against such funds without direction or authority from such customer." *Id.* at 235, 100 A. at 34-35.

■ The right to setoff is not absolute. We recognized in *Hale* that if a bank knows that a deposit is owned by a third party and not by the depositor, the bank may not apply the funds as payment for the depositor's debts. *Hale*, 90 Vt. at 501, 98 A. at 998; see also 5A Michie on Banks and Banking §§ 132, 141, at 542, 560 (M. Divine & G. Legner, eds., 1994) (where bank has notice that deposit is held by one for use of or as security for another person, bank has only such right of setoff as is not inconsistent with right of such person). The same is true if the bank knows of circumstances that give it a duty to inquire

about ownership. See *Union Stock Yards Bank v. Gillespie*, 137 U.S. 411, 416 (1890) (circumstances that distinguish deposit bar bank from treating it as property of depositor); 5A Michie on Banks and Banking, *supra*, § 141, at 571 (bank that has notice of such facts as put it on inquiry is bound by every fact that such inquiry would have disclosed). The majority rule, however, is that a bank that has neither actual nor constructive knowledge of a third party's interest in a deposit is entitled to set off the funds against a debt owed it by the depositor. *In re Triple A Coal Co.*, 55 B.R. 806, 812 (Bankr. S.D. Ohio 1985); see also *Cooper v. Nevada Bank of Commerce*, 403 P.2d 198, 199-200 (Nev. 1965) (bank with neither actual knowledge nor knowledge of facts sufficient to put it upon inquiry concerning third person's interest in deposited funds may apply deposit to individual debt of depositor); *Westerly Community Credit Union v. Industrial Nat'l Bank*, 240 A.2d 586, 591 (R.I. 1968) (absent actual or constructive notice on part of bank that deposited funds belonged to third person, bank had right to set off debts owed to it by depositor); J. TeSelle, *Banker's Right of Setoff — Banker Beware*, 34 Okla. L. Rev. 40, 44 (1981) (recognizing majority rule).[3] Applying this rule, we conclude that the Bank was entitled to set off the money invested in the CDs against TCC's indebtedness.

In this case, all of the information known to the Bank pointed to TCC as the owner of the CDs. Although plaintiff makes much of the three-signature requirement on the accounts, such a provision by itself did not indicate to the Bank that the accounts were jointly-owned or owned by a third party. Businesses commonly protect their funds by requiring multiple signatures for disbursement. The Bank had no way of knowing, based on the paperwork for the accounts and the correspondence from plaintiff and David Paul, that plaintiff represented anyone other than TCC.[4] See *Cooper*, 403 P.2d at 200 (bank had no duty to inquire whether third party had interest in crop

---

[3] A minority of jurisdictions follow an "equitable" rule, which "prohibits setoff where a third party has an interest in funds deposited in the account of a debtor-depositor, even though the bank has no actual or implied knowledge, where lack of such knowledge has not resulted in any change in the bank's position and no superior equities have been raised in the bank's favor." J. TeSelle, *Banker's Right of Setoff — Banker Beware*, 34 Okla. L. Rev. 40, 44-45 (1981).

[4] By statute, joint accounts must be made "in the names of two or more persons, payable to any one of them," 8 V.S.A. § 908, and trust accounts must disclose the name and residence of the beneficiary and be credited to the depositor as trustee. 8 V.S.A. § 907. Plaintiff does not claim to have satisfied the statutory requirements for multiparty accounts.

proceeds deposited in bank because depositor treated them as his own, and third party never notified bank of interest).

The closest plaintiff comes to presenting evidence that the Bank knew of the investors is the following statement from his own deposition, where he refers to statements made by Paul at a meeting between plaintiff, Paul, and an officer of the Bank: "[T]his is where I'm not exactly certain, but I believe the reference was made that we were there to establish the certificates of deposit for the investors in the joint venture." The Bank disputes this, but for purposes of the Bank's motion for summary judgment we accept the statement as true. It does not, however, affect our conclusion. Although this vague reference may have informed an alert bank employee that the funds for the CDs came from a group of investors, the statement does not contain the critical piece of information: that the investors intended to retain an ownership interest in the funds, superior to that of TCC, the account holder. Indeed, plaintiff admitted in the same deposition that no reference was ever made to the investors having a security interest in the CDs.

Plaintiff also argues that the Bank breached its contract with the depositors by permitting withdrawal of the funds without the required three signatures. A bank, however, is free to exercise its right of setoff without seeking the permission of the depositor. See *Goodwin*, 91 Vt. at 235, 100 A. at 34-35. Neither Paul's signature on the withdrawal slips nor Paul's assignment of the CDs to the Bank was necessary. Although the Bank chose to confer with Paul, it was not required to do so, nor was it required to obtain the permission of the other signatories on the account.

Plaintiff complains vociferously about the Bank's alleged failure to follow proper procedures. Ironically, however, the undisputed facts in this matter suggest that plaintiff bears substantial responsibility for the loss suffered by the investors. Plaintiff has not produced a scrap of correspondence or other written evidence directed to the Bank that explains his role as an escrow agent or the investors' interest in the CDs. Had plaintiff used his presumed expertise as both a certified public accountant and an attorney, and taken a few minutes to draft such a letter to the Bank before establishing the first of these accounts, the Bank would have been required to view Paul's claims with greater skepticism. Or, had plaintiff advised the investors of the riskiness of establishing the CDs in TCC's name at the bank to which TCC owed substantial sums of money, this entire incident might have been averted.

In essence, our decision in this case assigns the loss caused by David Paul, who is not a party, to plaintiff and the investors he represents rather than to the Bank. Plaintiff considers this result unfair. We do not agree. Although plaintiff, the investors, and the Bank may be equally "innocent" victims of Paul's conduct, plaintiff and the investors were in a far better position than the Bank to avert this loss. Plaintiff was not an unsophisticated novice but a well-credentialed professional advising a group of investors who had substantial resources. Nonetheless, plaintiff and the investors devised or at least agreed to an ill-advised plan for securing the investment and then failed to take obvious steps to protect the funds. The only criticism that can be leveled at the Bank is that it did not aggressively inquire as to the ownership of funds invested with it. Yet, as we have already discussed, based on the facts known to the Bank, such an inquiry was not required. Under these circumstances we see no unfairness in allowing the Bank to keep the funds.

*Affirmed.*